**JUDGE KOELTL**  **'09 CIV  6875**

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Dean R. Nicyper (DN-7757)
Lissa C. Gipson (LG-4320)
Mark C. Zauderer (MZ-5445)
*Attorneys for Plaintiff Dish Network L.L.C.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
DISH NETWORK L.L.C. f/k/a ECHOSTAR
SATELLITE L.L.C.,

                Plaintiff,

   - against -

ESPN, INC., and ESPN CLASSIC, INC.,

                Defendants.
------------------------------------------------------------------- X

No.

**COMPLAINT**

**Jury Trial Demanded**

     Plaintiff Dish Network L.L.C., f/k/a EchoStar Satellite L.L.C. ("Dish" or "Plaintiff"), by its attorneys, as its complaint against defendants ESPN, Inc., and ESPN Classic, Inc. (together "ESPN" or "Defendants"), alleges as follows:

### NATURE OF THE CASE

    1.    This Complaint arises out of ESPN's breach of an agreement it entered into with Dish in September 2005 (the "Agreement"). The Agreement precludes ESPN from entering into an agreement with another cable or satellite television distributor which contains a lower net effective rate or other more favorable provisions than those afforded to Dish without ESPN offering those same more favorable provisions to Dish.

News stories and press releases in May 2009 disclosed that ESPN entered into agreements with Dish's competitors, Comcast Corporation ("Comcast") and DirecTV, Inc., ("DirecTV") which contain more favorable provisions than those ESPN has given to Dish. Upon becoming aware of those new agreements with its competitors, Dish contacted ESPN and, in accordance with its agreement with ESPN, demanded the same more favorable provisions that ESPN provided to Comcast and DirecTV. ESPN has failed to offer those same more favorable provisions to Dish and thereby breached its Agreement with Dish, causing injury to Dish and entitling Dish to recover damages and/or require ESPN to provide to Dish the same more favorable provisions that ESPN provides to Dish's competitors.

## JURISDICTION & VENUE

2. Pursuant to the parties' written Agreement, the state and federal courts located in New York, New York shall have exclusive jurisdiction over any suit or other proceeding arising out of or based upon the Agreement, and the parties expressly agreed to waive any claim to the contrary.

3. This Court has jurisdiction over the subject matter of this action pursuant to 25 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

4. Venue is proper in this Court pursuant to the Agreement and pursuant to 28 U.S.C. § 1391(a)(1), (a)(3), and (c).

## PARTIES

5. Plaintiff Dish Network L.L.C. f/k/a EchoStar Satellite L.L.C. is a Colorado limited liability corporation authorized to transact business in New York, with

its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.

6.  Upon information and belief, Defendant ESPN, Inc. is a Delaware corporation authorized to transact business in New York, with its principal place of business at ESPN Plaza, Bristol, Connecticut 06010-7454.

7.  Upon information and belief, Defendant ESPN Classic, Inc. is a Delaware corporation authorized to transact business in New York, with its principal place of business at 306 Park Avenue South, 6th Floor, New York, New York 10010.

## FACTS

8.  Dish is a multi-channel video provider, offering video, audio and data services to customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a Direct Broadcast Satellite ("DBS") system. Dish uses high-powered satellites to broadcast movies, sports and general entertainment programming services to members of the public who have been legally authorized to receive its programming after payment of a subscription fee. Dish operates its DBS programming service under the trade name "DISH Network," which was launched in 1996.

9.  ESPN licenses to distributors, such as Dish, programming networks including those known as ESPN Classic and ESPNU (collectively referred to herein as the "ESPN Networks").

10. On or about September 15, 2005, Dish entered into an agreement with ESPN for Dish to distribute the ESPN Networks through Dish's DBS distribution system from 2005 through and including 2013 (the "Agreement").

11. The Agreement requires confidentiality regarding its terms except in

specified circumstances.

**Defendants' Breach of the MFN Provision**

12. The Agreement contains a "Most-Favored Nations" provision ("Dish's MFN"), pursuant to which ESPN is obligated to promptly offer to Dish certain more favorable provisions that ESPN affords to any Other Distributor (as defined in the agreement) with respect to the distribution of ESPN networks, including ESPN Classic and ESPNU.

13. In Section 13 of the Agreement, ESPN expressly represented and warranted that it will not enter into an agreement with any other distributor which contains a better "Net Effective Rate" or "More Favorable Provisions" for the channels ESPNU or ESPN Classic than those provided to Dish. If ESPN does provide More Favorable Provisions to another distributor, then Dish is entitled to the same More Favorable Provisions for ESPN Classic and/or ESPNU for the same amount of time such More Favorable Provisions are and have been available to the Other Distributor(s).

14. Specifically, in the MFN:

> ESPN represents and warrants that it has not prior to the Effective Date, and covenants and agrees that it shall not during the Term of this Agreement, as to each of the . . . ESPN Classic . . . and ESPNU Networks . . . "enter into" (as defined below) a license or other agreement with any Other Distributor which contains either: (i) a lower "Net Effective Rate" (as defined below), or (ii) more favorable packaging rights or obligations (i.e., the ability to distribute a Network on an a la carte basis, the ability to distribute a Network on an additional tier(s) or package(s), removing any packaging or bundling requirements, removing the obligation to distribute a Network on Basic or Expanded Basic tiers and/or the availability of multi-package distribution of a Network such as, for example, on a cable television system's Expanded Basic tier and a separate sports tier) (collectively and individually the "More

> Favorable Provisions"), for such Network than [Dish] is entitled to pursuant to this Agreement without promptly offering such More Favorable Provision to [Dish] for the applicable Network and for the same amount of time that such Provision is or was available to such Other Distributor.

15. The term "Net Effective Rate" in the Agreement is defined in relevant part as follows:

> For purposes of this Agreement, the calculation of "Net Effective Rate" shall be based on the residential, commercial and other rates paid by such Other Distributor (each as a stand alone inquiry) and reducing such amount by all packaging, volume, penetration or other discounts . . . rebates, allowances, launch support, marketing support, advertising or media purchases, incentives, credits, revenue sharing arrangements (e.g., with respect to home shopping), discounted marketing materials or other cash or in-kind consideration . . . .  For clarity, ESPN shall not take any action which would affect the calculation of Net Effective Rate or affect an other More Favorable Provision where such action is intended to frustrate or evade the purposes of this Section 13.

16. The term "enter into" is defined in the Agreement:

> [T]o include the entering into, amendment to, renewal of, or extension of, such license agreement, whether embodied in an agreement relating to the affected Network or otherwise (e.g., side letters or oral agreements), or, subject to clause (b)(ii), above, refraining from the enforcement of a provision or obligation such that [A] the Net Effective Rate actually paid by such Other Distributor is less than that specified in such Other Distributor's written agreement with ESPN or [B] the packaging rights or obligations of any Other Distributor are more favorable than those of [Dish's].

17. The MFN contains the following provisions specific to ESPN Classic and ESPNU:

> ESPN agrees that [Dish's] distribution, penetration and packaging of the . . . ESPN Classic . . . and ESPNU Network[s] as described in this Agreement shall satisfy any

condition related to the number of subscribers receiving the affected Network (volume), the number of [Dish] subscribers in total (size), packaging or penetration that may be imposed upon or agreed to by any Other Distributor during the Term for such Other Distributor to obtain the benefit of a More Favorable Provision, and that throughout the Term ESPN will not require [Dish] to accept any condition related to size, packaging, penetration or volume for [Dish] with respect to the affected Network(s) in order to avail itself of a More Favorable Provision related thereto.

18. In or about May 2009, ESPN, Comcast, and DirecTV issued press releases announcing that ESPN agreed to permit Comcast (an Other Distributor) and DirecTV (an Other Distributor and Dish's largest competitor) to offer and distribute ESPN Classic and ESPNU with net effective rates and other provisions, including but not limited to packaging rights, that Dish understands are more favorable to Comcast and DirecTV than the provisions of the Agreement are to Dish. Other news stories reported the same announcement. Upon information and belief, some or all of the More Favorable Provisions ESPN gave to Comcast and DirecTV in the announced deals became effective prior to this action and they continue today and well into the future.

19. Dish delivered notice to ESPN of Comcast's and DirecTV's more favorable distribution rights by letter dated June 9, 2009 and demanded that ESPN provide the same More Favorable Provisions to Dish.

20. Despite Dish's demands, and in breach of ESPN's obligations under the Agreement, ESPN has failed to offer to Dish the same More Favorable Provisions that ESPN has afforded to Comcast and DirecTV.

21. By refusing to honor their contractual obligations to Dish, Defendants are causing severe injury to Dish, including but not limited to harm to Dish's reputation and goodwill with the members of the public who are its subscribers and prospective

subscribers.

## First Claim For Relief
### (Breach of Contract)

22. Dish hereby incorporates the allegations set forth in paragraphs 1 through 21 inclusive as if set forth fully herein.

23. Dish has a contractual relationship with the Defendants under the Agreement dated September 15, 2005. Dish has satisfied its obligations pursuant to the terms of the Agreement.

24. Defendants breached the MFN provisions of the Agreement, and Dish has been injured and incurred damages as a result of ESPN's breach.

25. The damages Dish has incurred exceed one million dollars and the precise amount will be determined at trial.

## Second Claim for Relief
### (Breach of Contract - Injunction)

26. Dish hereby incorporates the above allegations set forth in paragraphs 1 through 25 inclusive as if set forth fully herein.

27. If, and to the extent the damages sought in the first cause of action are not sufficient to provide a full and complete remedy to Plaintiff, Plaintiff is entitled to injunctive relief.

28. Defendants should be required specifically to perform their obligations under the Agreement.

29. Defendants' failure to perform their obligations under the Agreement has caused and will cause harm to Plaintiff not reasonably compensable by money damages.

30. To the extent damages cannot adequately and fully compensate Dish for

CONFIDENTIAL

ESPN's breach, Plaintiff has no adequate remedy at law.

31. Defendants should be enjoined from breaching their obligations to Plaintiff and required to perform their obligations under the Agreement.

### Third Claim for Relief
### (Breach of the Covenant of Good Faith and Fair Dealing)

32. Dish hereby incorporates the above allegations set forth in paragraphs 1 through 31 inclusive as if set forth fully herein.

33. The Agreements, the relationship between the parties, and common law imply a covenant of good faith and fair dealing between Dish and Defendants.

34. Defendants breached those covenants of good faith and fair dealing.

35. Defendants' actions have caused and are continuing to cause serious and irreparable harm to Dish warranting exemplary damages.

## PRAYER FOR RELEIF

For these reasons, Dish respectfully requests that this Court:

a. Enter judgment in favor of Dish on the first and third claims for relief requiring ESPN to pay damages in excess of one million dollars, the precise amount to be determined at trial, plus exemplary damages;

b. Enter an Order requiring that, to the extent the damages relief sought in the first claim for relief is not sufficient to provide a full and complete remedy to Plaintiff, Defendants be enjoined and required to perform their obligations under the Agreements;

c. Award attorneys' fees and costs as allowed by law and the express provisions of the parties' Agreement; and

d. Award such other and further relief as this Court deems just and proper.

Plaintiff demands a trial by jury.

Dated: New York, New York
August 4, 2009

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP

By: _____
Dean R. Nicyper (DN-7757)
Lissa C. Gipson (LG-4320)
Mark C. Zauderer (MZ-5445)
One Liberty Plaza
New York, New York 10006
(212) 412-9500

*Attorneys for Plaintiff Dish Network L.L.C.*

330136

9