**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**

**MEMO ENDORSED**

LAW OFFICES
ONE LIBERTY PLAZA
NEW YORK, NEW YORK
10006-1404
(212) 412-9500
FAX (212) 964-9200

> I am available to discuss these issues on 4/5/11 at 12 noon. Counsel should advise my Chambers whether this is acceptable. If not, counsel should call my Chambers together to arrange another suitable date/time.
> —Maas, USMJ, 4/4/11

Dean R. Nicyper



BY HAND

Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

APR 04 2011

April 1, 2011

Re:  **DISH Network L.L.C., f/k/a EchoStar Satellite L.L.C. v.
ESPN, Inc. and ESPN Classic, Inc., 09 CIV 6875 (JGK) (FM)**

Dear Magistrate Judge Maas:

We represent DISH Network L.L.C. (formerly EchoStar Satellite L.L.C.) ("DISH") in the above-referenced action. We write pursuant to Local Rule 37.2 to request an informal conference with regard to two issues: (1) DISH respectfully requests that the Court permit DISH an additional 6 hours for the deposition of Mr. Connolly, who is serving in his individual capacity as well as defendants' Rule 30(b)(6) witness; and (2) DISH seeks an Order requiring defendants to produce additional documents as soon as possible.

**Extension of Time for Connolly Deposition**

Under the Federal Rules of Civil Procedure, the seven hour time limit for a deposition, set by Rule 30(d)(2), may be enlarged for good cause shown. Fed. R. Civ. P. 30 Advisory Committee's Note; *Condit v. Dunne*, 225 F.R.D. 100, 112-13 (S.D.N.Y. 2004) (noting "a court *must* allow additional time for discovery of relevant evidence 'for fair examination of the deponent' . . ."). The existence of good cause requires a fact specific inquiry, which depends on a variety of factors including the complexity of the action. *Carmody v. Vill. of Rockville Ctr.*, 05 Civ. 4907, 2007 WL 2177064, at *2 (E.D.N.Y. Jul. 27, 2007). Whether a witness is serving both in an individual capacity as well as a Rule 30(b)(6) witness on behalf of a corporation is a factor that weighs heavily in favor of additional deposition time. *See Sabre v. First Dominion Capital*, LLC, 01 Civ. 2145, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) (noting that "[a] deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. . . As a separate deposition that probes the knowledge of the entity and not the personal knowledge

WRITER'S DIRECT DIAL
(212) 412-9504
dnicyper@fzwz.com

**MEMO ENDORSED**

of the individual testifying, a 30(b)(6) deposition should be subject to its own independent seven-hour limit."). As DISH demonstrates below, the facts of this case overwhelmingly support the enlargement of time for the deposition of Justin Connolly, who will be deposed in both his individual capacity as well as ESPN's 30(b)(6) witness.

The nature of this case is extremely complex. There are <u>eighteen</u> third-party contracts involved in this case, almost all of which will require testimony from Mr. Connolly as to ESPN's interpretation of the terms and conditions. Testimony from Mr. Connolly will include his comparing the rights granted under these eighteen third-party contracts to the rights granted to DISH under its own lengthy fifty-nine page licensing agreement. There are <u>thirteen</u> claims, related to these nineteen contracts (*see* Second Amended Complaint, ¶¶ 27 & 28), which will also require testimony from Mr. Connolly, in his dual role as an individual fact witness who was personally involved in the transactions and the negotiation, drafting and implementation of the DISH/ESPN Agreement and in his capacity as defendants' 30(b)(6) corporate representative. There were extensive negotiations for all of the contracts at issue in this case, and our review of the documents produced indicates Mr. Connolly's involvement in virtually all of these negotiations. Each of the 13 claims concerns separate rights granted to other distributors and each constitutes a separate breach of the DISH/ESPN Agreement. To ask proper questions concerning all of these essential issues will require more than seven hours.

Moreover, prior deposition transcripts demonstrate that DISH has acted efficiently in taking depositions in this case. Based on the deposition of Eric Ratchman, who was deposed only in his individual capacity, it is clear that more time will be needed for Justin Connolly's deposition. After severely cutting down the intended topics to be covered at Mr. Ratchman's deposition (which focused only on a few of the breaches alleged in this action), counsel for DISH was barely able to complete Mr. Ratchman's deposition in just over seven hours, as Mr. Ratchman was involved with 850 relevant documents (1,750 pages) over 50 of which were marked as deposition exhibits, and the deposition resulted in a transcript approximately 360 pages in length. A review of the transcript demonstrates that DISH was efficient in managing in its time during the deposition. The deposition was lengthy due to the many topics that needed to be addressed and the complex analyses required of the witness. By comparison, the deposition of Justin Connolly is expected to be even more complex, as he was involved with 1,500 relevant documents, (about 7,500 pages) and his deposition will cover an even wider range of issues and <u>all thirteen</u> claims. While Mr. Ratchman was unable to testify on a number of subjects, it is anticipated that Mr. Connolly will be able to testify as to all aspects of the case, including all seventeen subjects raised in DISH's 30(b)(6) Notice. Based on Mr. Connolly's extensive involvement in the actions giving rise to DISH's claims, DISH also intends to question Mr. Connolly on all of these topics in his individual capacity.

Due to the good cause demonstrated based on the complexity of this case, the large number of documents involved, and the need to depose Mr. Connolly as both an individual and as a 30(b)(6) witness, DISH respectfully requests that the Court grant it an additional 6 hours to complete the deposition of Mr. Connolly.

### Document Requests

DISH's ability to obtain discovery of significant relevant documents from defendants has been an ongoing issue throughout this litigation. On March 16, 2011, DISH took the first deposition in the case – that of ESPN witnesses, Eric Ratchman. At his deposition, Mr. Ratchman referenced numerous documents that are relevant to DISH's existing claims and responsive to requests DISH served months ago, but those documents have not been produced by defendants to date. DISH promptly followed the deposition with a letter requesting that defendants produce nine documents Mr. Ratchman identified by the close of business on March 29, 2011, to ensure adequate time to review those documents prior to DISH's deposition of the next ESPN witnesses, Richard Grustas, scheduled to take place on April 6, 2011. *See* March 18, 2011 Letter from Lissa C. Gipson, Esq. to Theodore E. Tsekerides, Esq., attached as Exhibit A hereto. However, on March 29th, we received a letter from defendants' counsel refusing to produce all but two of these documents, which were Time Warner Cable ("TWC") agreements regarding Deportes that should have been produced prior to Mr. Ratchman's deposition. *See* March 29, 2011 Letter from Theodore E. Tsekerides, Esq. to Lissa C. Gipson, Esq., attached as Exhibit B hereto. DISH respectfully requests that defendants be required to produce the documents identified in greater detail in the following paragraphs as soon as possible, in light of the many upcoming depositions in the case.

### The Time Warner Cable Omnibus Agreement

As described in detail in the December 27, 2010 Letter to Judge Koeltl (the "December 27th Letter") (*see* pp. 2-3), ESPN has a history of sending DISH letters containing "options," which represent deals ESPN has entered into with other distributors containing lower rates for the ESPN Deportes channel. To date, DISH has received letters from ESPN containing "options" for ESPN Deportes, dated March 24, 2009, June 8, 2009, May 5, 2010 and December 6, 2010. DISH sought this Court's involvement previously in requiring defendants to produce the agreements underlying each of the options offered in the March 24, 2009 and June 8, 2009 Letters. This Court ordered defendants to produce those underlying agreements. In addition, DISH recently was able to come to an agreement with defendants with regard to the production of the TWC Texas Agreement, which was the basis for the option offered in the May 5, 2010 Letter. Defendants however, refuse to produce the agreement underlying all of the options offered in the December 6, 2010 Letter, despite the fact that the December 6, 2010 Letter follows in the very same vein as the several previous letters. All of these letters and the agreements that purportedly are the basis for the "options" the letters offered to DISH are the focus of DISH's claim that defendants breached the 2005 DISH/ESPN Agreement by "permitting DirecTV and Other Distributors to pay for ESPN Deportes subscribers in Puerto Rico, the U.S. Virgin Islands and other locations throughout the United States and its territories at rates substantially below those which DISH pays." Second Amended Complaint, ¶ 27(b).

Mr. Ratchman testified that the options contained in the December 6, 2010 MFN Offer Letter all represented MFN Offers based on the TWC Omnibus Agreement. *See* Transcript of

Deposition of Eric Ratchman, taken on March 16, 2011 ("Ratchman Tr."), excerpts of which are attached hereto as Exhibit C, at 288:1-18 ("Q: Is it your testimony that every single one of the options in this December 6, 2010 letter is solely based on the [TWC] omnibus renewal that took place approximately in August of 2010? A: Yes. Q: So there are no other agreements that served as a basis for this letter? A. No. . . . Q: Are there any offers in here that aren't MFN offers? A: No.") When questioned as to why the December 6, 2010 Letter was sent to DISH, Mr. Ratchman testified: "A: I created the letter in response to a deal we had executed in the marketplace. Q: Which deal was that? A: It was Time Warner Cable. Q: Which Time Warner Cable deal? A: All of them. . . it was an omnibus renewal of. . . all of their agreement[s]." *See* Ratchman Tr., at 286:1-12. Defendants have already produced five TWC agreements related to the distribution of ESPN Deportes by TWC. This sixth TWC Omnibus Agreement encompasses the remaining additional markets affected by ESPN Deportes rate reductions, which was predicted by ESPN and is discussed openly in prior communications produced by defendants.

Since ESPN admits that this TWC Agreement served as the basis for the final letter presenting lower rate "options" to DISH affecting the parties' rights and obligations with respect to Deportes, DISH respectfully requests that this Court order the production of the 2010 TWC Omnibus Agreement so that DISH can depose ESPN witnesses – namely Richard Grustas who is scheduled to be deposed on April 6th – regarding how ESPN created the options in the December 6th letter based on the terms in the TWC Omnibus Agreement. As was the case with many of the other "options" letters, Mr. Ratchman was unable to explain how the options ESPN presented to DISH were calculated, stating that Mr. Grustas would be able to answer those questions.

### Prior Drafts of ESPN's December 6, 2010 MFN Offer

DISH has previously sought, and obtained, the production of prior drafts of the "options" letters dated March 24, 2009 and June 8, 2009. *See* December 27th Letter and Exhibit J thereto. DISH uncovered at Mr. Ratchman's deposition that prior drafts of the December 6, 2010 Letter were created. *See* Ratchman Tr., at 285:3-10 ("Q: Have you seen a draft of this [December 6, 2010] letter before it was signed? A: Yes, I wrote this letter. Q: So there was a prior draft to this letter, correct? A: Yes. Q: That you created? A: Yes.") These prior drafts have been critical to the assessment of whether ESPN offered DISH equivalent rates to the triggering lower rate paid by another distributor. For example, ESPN produced drafts of the June 8, 2009 Letter (*see* December 27th Letter, at 5 & Exhibit J), from which DISH ascertained that the options considered in that draft were not even remotely close to the rates ultimately offered DISH in the June 8, 2009 Letter. Thus, the prior drafts of the December 6, 2010 Letter are unquestionably relevant to DISH's ESPN Deportes claim, and as such, defendants should be ordered to produce them.

### ESPN's "MFN Summaries"

From the outset of discovery, DISH has sought documents concerning any protocols ESPN may have in place for evaluating whether its MFN obligations are triggered. *See* Plaintiff's First Request to Defendants for Production of Documents, dated April 16, 2010 (attached hereto as Exhibit D), Request No. 9 ("All documents constituting or concerning Defendants' internal communications relating to whether to alert a programming distributor of an actual or potential more favorable provision or net effective rate in an ESPN agreement with another distributor."); Request No. 12 ("All documents concerning Defendants' procedures and practices for identifying actual or possible MFN violations and/or addressing them."); and Request No. 16 ("All documents concerning the identification or resolution of actual or potential MFN violations with any of Defendants' programming distributors.") At Mr. Ratchman's deposition, he testified that ESPN does in fact maintain a database that is used to track potential MFN issues. *See* Ratchman Tr., at 31:3-14, 15-18 ("We have our MFN provisions summarized in a document that is held in a central database, document database... Q: Do you call the central database by a particular name? A: SharePoint, which I think is pretty common software."); ("Q: And you said that there is one document that summarizes all the MFNs, is that right? A: Yeah, MFN Summary.") These items are of paramount importance to the central issues in this case regarding the parties' interpretation of DISH's MFN provisions and how ESPN determined whether an MFN provision is triggered. These documents summarizing the provisions of the MFN will not only demonstrate (i) how ESPN internally interprets, outside of this litigation, DISH's MFN and (ii) how, if at all, ESPN tracks and assesses potential MFN issues with its distributors, documents which this Court already required ESPN to produce. *See* So-Ordered Transcript of September 20, 2010 Court Conference, at 10:17-11:2 ("[W]ith regard to request eight and nine [of DISH's first set of document requests]... I'm going to allow those requests... But I'm going to narrow the time period... from January 1, 2008, through May of 2009.") As such, DISH respectfully asks that defendants be ordered to produce the MFN Summaries, to the extent that they characterize DISH's MFN, contained on ESPN's internal database.

### The Verizon Internet Agreement

Mr. Ratchman conceded that ESPN granted to Verizon the right to distribute ESPN content over the Internet. *See* Ratchman Tr., at 125:4-13 ("Q: Other than Time Warner Cable, are there any other distributors using the [I]nternet to distribute ESPN's content? A: Verizon. Q: And when did Verizon first have the ability to do that? A: I don't remember the date. Q: Was it within the last year? A: Yes. After Time Warner.") This testimony is a clear admission of ESPN's breaching of Section 3(f) of the 2005 DISH/ESPN Agreement, which prohibits ESPN from granting the right to distribute ESPN telecasts via the Internet without imposing a subscription fee specifically for such distribution. ESPN's breach of Section 3(f) is one of the specific claims in the Second Amended Complaint. Defendants should be compelled to produce the Verizon Internet Agreement which provides the basis for this particular breach of Section 3(f).

We have conferred with counsel for defendants regarding these issues and have been unable to resolve them.

For all of the reasons described above, DISH respectfully requests that this Court grant its request for an enlargement of the time for the deposition of Justin Connolly, for up to 6 hours beyond the seven hour limit, and that this Court order defendants to produce, as soon as possible, the responsive documents that were identified at the recent deposition of Eric Ratchman.

Respectfully,

Dean R. Nicyper

DRN/ac

Enclosures

cc: David L. Yohai, Esq. (by hand and e-mail)