UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

DISH NETWORK L.L.C. f/k/a ECHOSTAR
SATELLITE L.L.C.,

                Plaintiff,

    - against -

ESPN, INC., and ESPN CLASSIC, INC.,

            Defendants.

-------------------------------------------------------------- X

No. 09 CIV 6875 (JGK) (FM)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO AUTHORIZE ONE OF ITS EMPLOYEES TO REVIEW THE THIRD PARTY AGREEMENTS ON WHICH ITS CLAIMS ARE BASED

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Dean R. Nicyper, Esq.
Lissa C. Gipson, Esq.
Mark C. Zauderer, Esq.

*Attorneys for Plaintiff DISH Network L.L.C.*

500803

## Table of Contents

**Page(s)**

Table of Authorities ........................................................................................................ iii

Preliminary Statement ..................................................................................................... 1

Facts .................................................................................................................................. 2

ARGUMENT ..................................................................................................................... 5

I.    A DISH EMPLOYEE SHOULD BE PERMITTED TO
VIEW THE THIRD PARTYAGREEMENTS RESULTING
IN BREACHES OF DISH'S MFN ................................................................... 5

    A.    Courts Routinely Permit Employees To View
Confidential Documents To Prepare For And Assist With Trial ................ 6

    B.    DISH Will Be Deprived Of The Ability To Prove
Its Case If It Cannot Show The Third Party Agreements
To A DISH Employee .................................................................................. 8

    C.    Reasonable Protections Can Be Put In
Place To Protect Any Truly Confidential
Information In The Third Party Agreements ............................................. 10

    D.    Defendants Concede That It Is Necessary To
Have DISH Employees Review The Third Party
Agreements That Are The Basis Of The Claims ....................................... 12

II.    BECAUSE IT IS NECESSARY FOR AT LEAST ONE
DISH WITNESS TO REVIEW THE THIRD PARTY
AGREEMENTS, MODIFICATION OF THE
STIPULATED PROTECTIVE ORDER IS PROPER .................................... 13

    A.    Defendants Cannot Demonstrate A Basis To Preclude Modification ....... 14

        i.    The Stipulated Protective Order Only
Applies To The Pre-Trial Stages Of This Case ............................. 14

        ii.    A Stipulated Protective Order Has Less Force
Than One Subject To A Good Cause Analysis ............................... 15

        iii.    The Stipulated Protective Order Is Broad In Scope
And Applies To Almost Every Document Produced
In The Litigation ............................................................................ 15

**Table of Contents** (cont'd)

Page(s)

iv.    The Stipulated Protective Order Provides A
Process To Seek Modifications Of The Order And
Resolve Future Disputes Regarding Designations.........................17

v.    The Stipulated Protective Order Affords Parties
And Non-Parties The Ability To Unilaterally
Designate Documents ................................................................18

B.    DISH Does Not Seek To Provide Public
Access To The Third Party Agreements ....................................19

CONCLUSION...................................................................................................19

## <u>Table of Authorities</u>

<u>Page(s)</u>

*Allen v. City of N.Y.*,
   420 F. Supp. 2d 295 (S.D.N.Y. 2006)........................................................................... 14, 17, 18

*Dep't of Econ. Dev. v. Arthur Anderson & Co.*,
   924 F. Supp. 449 (S.D.N.Y. 1996) ....................................................................................... 13

*Eastman Kodak Co. v. Int'l Harvester Co.*,
   No. M 8-85, 1970 WL 10127 (S.D.N.Y. Nov. 10, 1970) ..................................................... 11

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   255 F.R.D. 308 (D. Conn. 2009)..................................................................................... passim

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003) ................................................................... 14, 15, 17, 18

*Harrisonville Tel. Co. v. Ill. Commerce Comm'n*,
   472 F. Supp. 2d 1071 (S.D. Ill. 2006)...................................................................................... 7

*Hickman v. Taylor*,
   329 U.S. 495, 67 S. Ct. 385 (1947)........................................................................................... 5

*Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank, N.A.*,
   No. 08 Civ. 5723 (NRB), 2009 WL 1834596 (S.D.N.Y. June 16, 2009)................................ 13

*Int'l Creative Mgmt. v. Abate*,
   No. 07 Civ. 1979 (PKL), 2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) ................................. 10

*Lent v. Signature Truck Sys.*,
   No. 06 CV 569S, 2010 WL 1707998 (W.D.N.Y. Apr. 26, 2010) ........................................... 16

*Lugosch v. Pyramid Co. of Onondaga, LLC*,
   435 F.3d 110 (2d Cir. 2006).................................................................................... 14, 16, 17

*MGP Ingredients, Inc. v. Mars, Inc.*,
   No. 06-2318-JWL-DJW, 2007 WL 756645 (D. Kan. Mar. 8, 2007)........................................ 6

*Movie Gallery US, LLC v. Greenshields*,
   No. 207-CV-1032-MHT, 2008 WL 1746730 (D. Ala. Apr. 14, 2008) ..................................... 7

*Orwasher v. Orwasher*,
   No. 09 Civ. 1081 (VM) (JCF), 2010 WL 2017254 (S.D.N.Y. May 20, 2010)........................... 9

*In re Parlamat Sec. Litig.*,
   258 F.R.D. 236 (S.D.N.Y. 2009) ........................................................................................... 10

**Table of Authorities (cont'd)**

**Page(s)**

*Princeton Mgmt. Corp. v. Assimakopoulos,*
    No. 91 Civ. 5192 (JFK), 1992 WL 84552 (S.D.N.Y. Apr. 10, 1992)........................................ 11

*Rates Tech., Inc. v. Mediatrix Telcom, Inc.,*
    No. CV 05-2755 (JS) (AKT), 2007 WL 2581776 (E.D.N.Y. Sept. 5, 2007) ........................... 10

*Rosenblatt v. Nw. Airlines, Inc.,*
    54 F.R.D. 21 (S.D.N.Y. 1971) ................................................................................................ 10

*S.E.C. v. TheStreet.com,*
    273 F.3d 222 (2d Cir. 2001)................................................................................................... 14

*Swatch Watch S.A. v. Aste Trading Corp.,*
    No. 85 Civ. 7726 (MJL), 1986 WL 734 (S.D.N.Y. Jan. 3, 1986)...................................... 5, 6, 7

*U.S. v. Lever Bros Co.,*
    193 F. Supp. 254 (S.D.N.Y. 1961) ............................................................................. 6, 8, 9, 10

DISH Network L.L.C. f/k/a EchoStar Satellite L.L.C. ("DISH" or "Plaintiff") respectfully submits this memorandum of law in support of its motion to permit one of its employees to review, under the Stipulated Protective Order (the "Stipulated Protective Order") entered into by DISH and Defendants ESPN, Inc. and ESPN Classic, Inc. ("ESPN" or "Defendants") on May 7, 2010 and so-ordered by this Court on May 12, 2010,[1] the third party agreements that constitute the basis for DISH's claims.

## PRELIMINARY STATEMENT

By this motion, DISH seeks the Court's authorization to permit a single DISH employee to review the 20 documents that constitute the basis for DISH's claims in this action. Defendants already produced these documents, but chose to stamp them "highly confidential." Under the parties' stipulation, which was so-ordered by the Court, DISH employees are not permitted to review documents Defendants stamp "highly confidential."

Because these documents are the basis for DISH's claims, Defendants' stamping them "highly confidential" prevents DISH employees, other than litigation counsel, from knowing the basis of the very claims DISH is pursuing. It is DISH's Programming Department employees, however, who have the expertise necessary to fully understand and analyze these documents. Those employees also are fully familiar with the agreement between DISH and Defendants at issue in this action. An appropriate employee in DISH's Programming Department would have the ability to fully detail the specific breaches that resulted from Defendants' entering into the third party agreements, if that employee is permitted to review these third party agreements.

---

[1] A copy of the Stipulated Protective Order is attached to the Declaration of Kimberly A. Pallen in Support of Plaintiff's Motion to Authorize One of Its Employees to Review the Third Party Agreements on Which Its Claims Are Based, dated April 18, 2011 ("Pallen Decl.") as Exhibit A.

DISH's employees will have to testify about these documents at the trial in any event. At least one designated employee from DISH's Programming Department therefore should be permitted to review the documents now to assist in preparing the case, including calculating DISH's damages. Doing so now will help focus the case and thereby save all parties time and expense. DISH respectfully requests that this Court authorize DISH to allow one of its employees to review, solely for the purposes of this action, the third party agreements that constitute the basis of DISH's claims.

## FACTS

This case arises out of Defendants' breaches of the Most-Favored Nations clause (the "MFN") in DISH's eight-year Distribution License Agreement with ESPN (the "2005 DISH/ESPN Agreement"). The MFN precludes Defendants from, *inter alia*, entering into any agreements with any programming distributors which contain provisions more favorable than those afforded to DISH without promptly offering those same more favorable provisions to DISH for the same amount of time.

MFN breaches under the 2005 DISH/ESPN Agreement are based on agreements ESPN enters into with other cable and satellite television distributors. DISH has no access to those agreements. Therefore, if ESPN grants better Net Effective Rates or other More Favorable Provisions to other distributors, ESPN is obligated under the 2005 DISH/ESPN Agreement to offer them to DISH. If ESPN fails to satisfy its obligations, it breaches the MFN, and access to the offending agreements ESPN entered into with those other distributors is critical for demonstrating this MFN breach.

DISH's claims here arise from Defendants' providing more favorable terms to Comcast, DirecTV, Time Warner Cable, AT&T and Verizon (the "Third Parties" or, individually, "Third Party") in various agreements (the "Third Party Agreements"), without offering those same terms to

DISH for the same amount of time.[2]  Defendants already produced the Third Party Agreements in this action, some of which Defendants redacted extensively despite the Stipulated Protective Order.

DISH and ESPN entered into the Stipulated Protective Order on May 7, 2010, which was so-ordered by this Court on May 12, 2010.  *See* Stipulated Protective Order, Ex. A to the Pallen Decl.  It covers all "Litigation Material(s)," which include: "(a) documents, exhibits, answers to interrogatories, responses to requests for admissions, deposition testimony and transcriptions (including exhibits), and all written, recorded, graphic or electronically-stored matters (and all identical and non-identical copies thereof); (b) any copies, notes, abstracts or summaries of such information, and the information itself; and (c) any pleading, affidavit, declaration, brief, motion, transcript or other writing containing such information."  *Id.* at ¶ 1.  It permits the parties unilaterally to designate any materials in the above categories as "Confidential" or "Highly Confidential."  *Id.* at ¶¶ 6-10.  As a result of its breadth, only 2 documents out of 5,906 documents produced in this litigation are not marked either "Highly Confidential" or "Confidential."  Pallen Decl., ¶ 9.  Because the Stipulated Protective Order was negotiated and stipulated to by both parties, none of the designations applied by either party was subject to a good cause analysis by this Court.  Pallen Decl., ¶ 11.

Pursuant to the Stipulated Protective Order, documents designated as "Confidential" may be viewed only by: (a) employees of the parties that are deposition or trial witnesses who are involved in the prosecution, defense or appeal of this action, (b) outside counsel, (c) in-house

---

[2] All of the Third Party Agreements are fully identified in the Pallen Declaration at ¶ 13 and bear the following Bates numbers: (1) ESPN00022-58; (2) ESPN00011-18; (3) ESPN00019-21; (4) ESPN-00001588-1680; (5) ESPN-00001681-1761; (6) ESPN00011245-11253; (7) ESPN 00001-10; (8) ESPN-00001525-1587; (9) ESPN 00334-340; (10) ESPN-00001468-1482; (11) ESPN-00001483-1524; (12) ESPN-00015570-15579; (13) ESPN-00015580-15620 (14) ESPN-0017048-17051; (15) ESPN-0017052-17054; (16) ESPN-0017055-17068; (17) ESPN-0017069-17077; (18) ESPN-0017078-17086; (19) ESPN-0018466-18482; and (20) ESPN-0018535-18540.

counsel, (d) consultants and experts, (e) any person identified in the document(s) as an author, recipient, or one with knowledge of the document(s), (f) any person affiliated with a producing party, (g) the Court, (h) stenographers, and (i) others persons only upon consent of the producing person or order of the Court.  Stipulated Protective Order (Pallen Decl. Ex. A) at ¶ 9.

Documents designated as "Highly Confidential" may be viewed by any of the above, except employees (other than in-house litigation counsel) of the non-producing party.  *Id.* at ¶ 10. In essence, the "Highly Confidential" designation is an "attorneys' eyes only" designation.

The Stipulated Protective Order also permits the parties to seek from this Court a modification of its terms "*at any time.*"  *Id.* at ¶ 15 (emphasis added).  *See also id.* at ¶ 7.

Finally, the Stipulated Protective Order applies only to the pre-trial stages of the litigation.  *Id.* at ¶ 14.

As a result of Defendants' choosing to place "Highly Confidential" stamps on all of the Third Party Agreements at issue on this motion, DISH's employees are not permitted to view such documents.  Yet, it is the employees in DISH's Programming Department who have intimate knowledge of the complex cable and satellite television industry.  *See* Declaration of Carolyn Crawford In Support of Plaintiff's Motion to Authorize One of Its Employees To Review the Third Party Agreements on Which Its Claims Are Based, dated April 19, 2011 ("Crawford Decl.") at ¶ 6.  These employees have expertise in programming, industry standards, rate structures, MFN clauses and penetration and packaging requirements that litigation counsel and outside counsel do not possess.  *Id.*  DISH's employees also are intimately familiar with the terms and conditions embodied in the 2005 DISH/ESPN Agreement and, as a result, could better analyze the Third Party Agreements and detail the extent to which they triggered Defendants' obligations under the MFN.  Crawford Decl. ¶ 7.  A DISH employee permitted to view the Third Party Agreements would be able to assist outside counsel in focusing the issues and saving all parties time and

expense. *Id.* Moreover, DISH's employees are the best suited to simply and clearly explain to a jury why Defendants' entrance into the Third Party Agreements constituted breaches of the 2005 DISH/ESPN Agreement. Finally, a DISH employee is the person who is most capable of understanding the injury to DISH from each of the thirteen breaches at issue and knowing what information is needed to most accurately calculate damages.[3]  Crawford Decl. ¶ 8.

DISH therefore seeks to show to *one* designated employee the Third Party Agreements that resulted in the breaches of DISH's MFN.  Such person would use the information in the Third Party Agreements only for the purposes of prosecuting DISH's claims in this action.  *Id.* at ¶ 9.  DISH respectfully requests that the Court grant its motion to allow such person to review the Third Party Agreements under the Stipulated Protective Order.[4]

## ARGUMENT

### I.  A DISH EMPLOYEE SHOULD BE PERMITTED TO VIEW THE THIRD PARTY AGREEMENTS RESULTING IN BREACHES OF DISH'S MFN

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 392 (1947).  A plaintiff is prejudiced when its in-house experts with specialized knowledge of the industry are precluded from having access to the information that is the basis for the claims. *See Swatch Watch S.A. v.*

---

[3] Defendants agree that DISH's in-house litigation counsel do not have the same intimate knowledge of the issues surrounding the Third Party Agreements as an employee in DISH's Programming Department. *See* Amended Confidentiality Stipulation And Protective Order Governing Certain Information Provided Solely For Settlement Purposes, dated January 13, 2010 and so-ordered by Magistrate Judge Maas on January 19, 2010 (Exhibit B to the Pallen Decl., at p. 1) ("Messrs. Blum and Kitei are in-house lawyers at Dish actively involved in this litigation and have no responsibility for negotiating licensing or other agreements related to telecasting content on behalf of Dish").

[4] DISH asked Defendants to agree to permit one employee in DISH's Programming Department to review the Third Party Agreements.  *See* Letter from D. Nicyper to D. Yohai, dated April 11, 2010 (Exhibit F to the Pallen Decl.).  Defendants refused.  *See* Letter from T. Tsekerides to D. Nicyper, dated April 15, 2011 (Exhibit G to the Pallen Decl.).

*Aste Trading Corp.*, No. 85 Civ. 7726 (MJL), 1986 WL 734, at *6-7 (S.D.N.Y. Jan. 3, 1986);

*MGP Ingredients, Inc. v. Mars, Inc.*, No. 06-2318-JWL-DJW, 2007 WL 756645 (D. Kan. Mar. 8,

2007).  As one court explained:

> It is likely that Plaintiff will be prejudiced if its in-house
> [specialists] cannot have access to the confidential and highly
> confidential information disclosed by Defendants in this case.
> Plaintiff must be able to rely on its in-house [specialists] to help
> direct the litigation, devise legal strategy, and provide assistance to
> Plaintiff's outside counsel.  Given the technical nature of this case,
> the advice of Plaintiff's in-house [specialists] with specialized
> knowledge of the industry could be essential to the proper handling
> of this litigation by outside counsel.

*MGP Ingredients, Inc.*, 2007 WL 756645, at *3.  Where there are critical documents that "will

undoubtedly be introduced at the trial[,] to deprive the knowledgeable personnel of the absolute

right to examine and discuss these documents at the trial would be tantamount to depriving [the

party] of the right to [present its case]."  *U.S. v. Lever Bros. Co.*, 193 F. Supp. 254, 258

(S.D.N.Y. 1961).  Because, therefore, the party's "personnel properly will have a full opportunity

to examine and consider" such documents at the trial, "if pre-trial disclosure is not allowed,

substantial delays at the trial would result while this data is being analyzed and evaluated."  *Id.*

(finding "one of the prime purposes of the federal discovery procedure is to facilitate adequate

pre-trial preparation, and thereby avoid subsequent delay at the trial.")

A.   **Courts Routinely Permit Employees To View**
     **Confidential Documents To Prepare For And Assist With Trial**

Where, as here, employees have extensive industry knowledge that outside counsel may

not possess, courts have modified protective orders to permit employees to access documents

alleged to be confidential or to contain trade secrets.  *See Swatch Watch*, 1986 WL 734, at *6-7.

In *Swatch Watch*, plaintiffs moved to modify a protective order, which permitted only the

attorney for plaintiffs to have access to documents.  The plaintiffs argued that the order's

restriction "prevent[ed] plaintiffs from developing information necessary to prosecute its case." *Id.* at *6. The court agreed with the plaintiffs and granted plaintiffs' motion to modify the protective order on the grounds that the clients were much more knowledgeable in the trade, and therefore showing the documents to the clients would provide for a more fruitful investigation. *Id.* at *6-7 (inserting the "condition that the disclosed information may not be used for public relations purposes, to compete with defendants or to publicly disclose trade secrets.").

As long as reasonable protections are in place, courts permit employees with technical knowledge to view information to avoid prejudice to the party and enable prosecution of the case. *See, e.g., Movie Gallery US, LLC v. Greenshields*, No. 207-CV-1032-MHT, 2008 WL 1746730, at *1-2 (D. Ala. Apr. 14, 2008) (fashioning a protective order permitting one employee to view documents designated "highly confidential" where plaintiff explained that it was its "employees [who] are knowledgeable about all facets of their highly competitive businesses…[and that] if it cannot make disclosure of the information to these employees it will suffer prejudice because its ability to prosecute this case will be impaired."); *Harrisonville Tel. Co. v. Ill. Commerce Comm'n*, 472 F. Supp. 2d 1071, 1079 (S.D. Ill. 2006) (granting plaintiff's application to have employees view documents, finding that "[plaintiffs] explain – reasonably, in the Court's view – that they have employees with technical knowledge regarding the subject matter of this litigation that neither the [plaintiffs'] attorneys nor, possibly, outside experts possess.").

Here, it is critical that a DISH employee with specialized knowledge of the intricacies of the cable and satellite television industry assist with focusing the issues, trial preparation and assessment of damages. DISH's employees, unlike in-house litigation counsel or outside counsel, have particularized knowledge in all aspects of the industry and particularly the rights and obligations under agreements between programming companies such as ESPN and

distributors such as DISH. The agreements between cable and satellite distributors and program providers are complex. A DISH employee experienced in this industry and well-versed in the 2005 DISH/ESPN Agreement is the person most capable of accurately assessing in what way and to what extent license fee rates, packaging terms, tier obligations, penetration formulas and reductions to net effective rates provided to other distributors triggered DISH's MFN. The analyses required to determine whether rates and terms offered to other distributors are better than those offered to DISH are analyses best performed by an employee at DISH with comprehensive expertise in such matters -- not by DISH's outside litigation counsel.

**B. DISH Will Be Deprived Of The Ability To Prove Its Case If It Cannot Show The Third Party Agreements To A DISH Employee**

Currently, no one at DISH other than DISH's in-house litigation counsel is permitted to see the Third Party Agreements. Consequently, no one with specialized knowledge may view those provisions in the Third Party Agreements that triggered DISH's MFN or explain why the Third Party Agreements triggered DISH's MFN. Conversely, Defendants' witnesses are permitted to testify (and have testified) at length regarding the Third Party Agreements generally, contending that the provisions at issue are not breaches of DISH's MFN. DISH's presentation of its case should not be dependent upon testimony of Defendants' hostile witnesses.

In *U.S. v. Lever Bros. Co.*, a non-party sought to prohibit a party from showing confidential documents to the party's personnel. *Lever Bros. Co.*, 193 F. Supp. 254. The non-party claimed that by permitting the party's personnel to see these documents, the party could "easily ascertain [the non-party's] current sales, expenditures, profits, volume of production and product trends," resulting in "irreparable injury to [the non-party's] competitive position." *Id.* at 256. The court considered the non-party's concerns, but held that the "documents sought are not only highly material and relevant to the issues in the case, but also are absolutely necessary to the

8

preparation of [the party's] defense." *Id.* The court further held that the party "should be permitted to discuss this data with company personnel" because "[t]he information involved is of a nature which inherently requires discussion with expert personnel and those intimately familiar with the industry [and their analysis] will be a necessity if the defense of this action is to be adequately prepared." *Id.* at 257.[5]

DISH's situation is similar to that of the defendant's in *Lever Brothers Co.* The terms and provisions of the Third Party Agreements indisputably are "highly material and relevant" -- they are in fact the very basis of all of DISH's claims in this case. Providing a DISH employee access to the Third Party Agreements would not cause injury to anyone's competitive position because the employee would be precluded from using information in the agreements for any purpose other than this litigation. In contrast, DISH will be significantly disadvantaged if "highly material and relevant" evidence cannot be shown to one of its witnesses who has specialized knowledge of the industry, industry terms, MFN clauses and the 2005 DISH/ESPN Agreement.

The court in *Lever Brothers Co.* also pointed to the fact that the non-party's data "will undoubtedly be introduced at the trial, where [the party's] personnel properly will have a full opportunity to examine and consider it." *Id.* at 258. Therefore, not allowing the party's personnel to review the documents "would be tantamount to depriving [the party] of the right to [present its case]." *Id.* As stated *supra*, the Stipulated Protective Order does not apply to the use

---

[5] Other cases have similarly permitted parties to view confidential documents when those documents "go to the heart of the plaintiff's claims." *See Orwasher v. Orwasher*, No. 09 Civ. 1081 (VM) (JCF), 2010 WL 2017254, at *2 (S.D.N.Y. May 20, 2010). In *Orwasher*, plaintiff brought a shareholder derivative action for breach of fiduciary duty, fraud, and self dealing (*inter alia*) regarding the sale of the company's assets. The court permitted the designation of documents including the sales agreements, communications with the buyer, accounting work papers, financial statements and tax returns to be changed from "highly confidential" to "confidential" so that the individual plaintiff could see the documents. Here, DISH merely seeks permission for one DISH employee to view select documents in order to prosecute DISH's claims.

of documents at trial. *See* Stipulated Protective Order (Pallen Decl. Ex. A) at ¶ 14. Permitting a

DISH employee to become aware now of the facts and issues about which he or she will testify

at trial will serve overall judicial economy and help focus the issues in the case.

### C.   Reasonable Protections Can Be Put In Place To Protect Any Truly Confidential Information In The Third Party Agreements

"Under New York law, a trade secret is any formula, pattern, device or compilation of

information which is used in one's business, and which gives [the owner] an opportunity to

obtain an advantage over competitors who do not know or use it." *Int'l Creative Mgmt. v. Abate*,

No. 07 Civ. 1979 (PKL), 2007 WL 950092, at *4 (S.D.N.Y. Mar. 28, 2007) (citations and

quotations omitted). General business information is not afforded as much protection as

technological information such as patents and secret formulas. *See, e.g., Rosenblatt v. Nw.*

*Airlines, Inc.*, 54 F.R.D. 21, 23 (S.D.N.Y. 1971) (permitting plaintiffs' personnel to view

documents because documents at issue were not "highly important technological matters [or]

developments."); *see also Rates Tech., Inc. v. Mediatrix Telcom, Inc.*, No. CV 05-2755 (JS)

(AKT), 2007 WL 2581776, at *2 (E.D.N.Y. Sept. 5, 2007) ("[C]ourts…afford fuller protection

to technological information than that extended to ordinary business information."). Moreover,

"[s]imply labeling information 'confidential'…does not render that information protectable."

*Int'l Creative Mgmt.*, 2007 WL 950092, at *4.

There has been no showing in this action with respect to whether, and if so to what

extent, the Third Party Agreements contain trade secrets.[6] ESPN has already disclosed some of

---

[6] Defendants have the burden of establishing that the Third Party Agreements at issue are entitled to confidential treatment. *See In re Parlamat Sec. Litig.*, 258 F.R.D. 236, 243 (S.D.N.Y. 2009) ("A blanket protective order temporarily postpones the good cause showing until a party…challenges the continued confidential treatment of particular documents. The burden of establishing good cause then lies with the party seeking to prevent the disclosure of documents.").

the information from those agreements in press releases and trade publications.[7]  Those terms

therefore are not trade secrets.  In addition, since this action was filed, Defendants belatedly

offered many similar terms to DISH in letters to its Programming Department.  Permitting one of

those same DISH employees to see those terms in the Third Party Agreements therefore will not

reveal any trade secrets.

Even if, and to the extent that, the Third Party Agreements contain trade secrets,

appropriate protections can be applied to eliminate any concerns that could arise from permitting

a DISH employee to see the Third Party Agreements.  One does not have "the absolute right to

refuse to divulge" information merely because it contains trade secrets.  *Eastman Kodak Co. v.

Int'l Harvester Co.*, No. M 8-85, 1970 WL 10127, at *2 (S.D.N.Y. Nov. 10, 1970).  "Rather, if

the information is found to be relevant and necessary at the pretrial stage of the case the court

will order disclosure under a suitable protective order."  *Id.* at *2-3 (granting plaintiff's motion to

compel production of document containing alleged trade secret and permitting document to be

shown to plaintiff's personnel "in order to prepare for and assist in the trial of the case."); *see

also Princeton Mgmt. Corp. v. Assimakopoulos*, No. 91 Civ. 5192 (JFK), 1992 WL 84552, at *1

(S.D.N.Y. Apr. 10, 1992) (finding even "if the materials were confidential," plaintiff proposed a

reasonable protective order permitting access to "two specifically designated representatives,"

which "is all that is necessary to protect any legitimate interest in confidentiality defendant may

have").

---

[7] *See* Press Releases and Trade Publications, attached to the Pallen Decl. as Ex. C (September 3, 2010
CableFAX Daily (describing ESPN/Time Warner Cable deal to launch ESPN3) (DishP0000917-21);
October 19, 2010 CableFAX Daily (describing ESPN/Time Warner Cable deal to stream ESPN "at no
additional charge") (DishP0000922-33); May 19, 2009 Press Release (regarding Comcast launch of
ESPNU) (ESPN-00008477-78); May 19, 2009 Press Release (regarding ESPNU/ESPN Classic
rolldown/rollup by DirecTV) (ESPN-00008479)).

Here, disclosure to one appropriate DISH Programming Department employee could be conditioned on that employee being obligated not to use any information obtained through the Third Party Agreements for any purpose other than to prosecute DISH's claims in this action.

### D. Defendants Concede That It Is Necessary To Have DISH Employees Review The Third Party Agreements That Are The Basis Of The Claims

Defendants themselves have conceded the necessity of having DISH employees be familiar with the Third Party Agreements.  First, they did so by demanding that DISH witnesses testify about the basis of each of the thirteen claims in this action -- knowing that the basis is, of course, the Third Party Agreements.  *See* Defendants' Amended Notice of Deposition Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, dated January 28, 2011 (the "30(b)(6) Notice") (attached to the Pallen Decl. as Ex. D) (demanding that a DISH witness testify at deposition about: "Dish's contention that the alleged 'breach[es]' contained in Paragraph 27 of the Amended Complaint violated the MFN Provision of the ESPN Agreement" (Request No. 6); "The reasons why Dish believes it is entitled, or not entitled, to the terms and conditions contained in Defendants' 'swap' deals with DirecTV and Comcast in May of 2009" (Request No. 7); "Dish's contention concerning rate reductions in the event that ESPN ceases to telecast National Football League ("NFL") games, in light of the language of Section 13(b) of the ESPN Agreement concerning 'rate reductions, adjustments, rebates or discounts associated with the loss of NFL or any other programming....'" (Request No. 14); and "Dish's contention that the 'swap' deal that ESPN offered to Dish in January of 2009 contained terms regarding the timing of the 'roll-up' of the Network ESPN Classic that allegedly violated the MFN Provision of the ESPN Agreement." (Request No. 15)).

Defendants also are currently demanding that DISH produce during fact discovery its damages calculations regarding the alleged breaches (*see, e.g.*, March 18, 2011 Letter from D.

Yolkut to D. Nicyper demanding "documents concerning [DISH's] alleged damages," Ex. E to the Pallen Decl.), knowing that DISH employees will have to rely on the offending Third Party Agreements to be able to perform such calculations. DISH, of course, could produce its damages calculations much sooner if Defendants did not preclude DISH employees from reviewing the Third Party Agreements necessary to evaluate the claims and breaches and perform the calculations. A DISH employee with thorough knowledge of both the industry generally and the 2005 DISH/ESPN Agreement in particular could efficiently identify and compile the required information for calculating accurate damages amounts.

Defendants should not be permitted on the one hand to continually demand liability testimony and damages calculations that require analyzing the Third Party Agreements, yet refuse to allow a DISH employee to view those Agreements to evaluate the breaches and ascertain damages. To effectively refute ESPN's witnesses' interpretations of the Third Party Agreements and to allow DISH, as plaintiff, to put on its case, DISH respectfully requests that one of its Programming Department witnesses be permitted to review the Third Party Agreements under the Stipulated Protective Order.

## II.   BECAUSE IT IS NECESSARY FOR AT LEAST ONE DISH WITNESS TO REVIEW THE THIRD PARTY AGREEMENTS, MODIFICATION OF THE STIPULATED PROTECTIVE ORDER IS PROPER

DISH and Defendants expressly agreed in the Stipulated Protective Order that either of them "may *at any time* apply to the Court for modification of this Order." Stipulated Protective Order, ¶ 15 (Ex. A to Pallen Decl.) (emphasis added).[8] Where a "confidentiality order

---

[8] Protective orders, such as those at issue here, "are interpreted according to contract principles." *Dep't of Econ. Dev. v. Arthur Anderson & Co.*, 924 F. Supp. 449, 487 (S.D.N.Y. 1996). To not give effect to this provision of the Stipulated Protective Order would render it meaningless. *Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank, N.A.*, No. 08 Civ. 5723 (NRB), 2009 WL 1834596, at *4 (S.D.N.Y. June 16, 2009).

specifically contemplates that relief from the provisions of the order may be sought *at any time…*it is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret." *Lugosch v. Pyramid Co. of Onondaga, LLC*, 435 F.3d 110, 126 (2d Cir. 2006) (emphasis added); *see also In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 320 (D. Conn. 2009). In such circumstances, a reasonable modification is proper. *Id.* at 321.

A.   **Defendants Cannot Demonstrate A Basis To Preclude Modification**

Aside from whether a protective order itself permits modification, it is proper for a court to either modify a protective order or fashion terms that permit limited disclosure where the protective order: (i) limits its protections to pre-trial stages of the case; (ii) is based on a stipulation among the parties, as opposed to a motion by which a party seeking protection of a particular document satisfied the good cause standard for protection of that document; (iii) is a "blanket protective order" that covers broad categories of documents, as opposed to certain specified documents; (iv) permits the parties unilaterally to designate whatever documents they choose to designate as confidential or highly confidential; or (v) permits the parties to challenge a designating party's designations and have a court resolve such disputes. *See Allen v. City of N.Y.*, 420 F. Supp. 2d 295, 300-01 (S.D.N.Y. 2006); *see also Fournier v. Erickson*, 242 F. Supp. 2d 318, 341 (S.D.N.Y. 2003); *see also In re Ethylene*, 255 F.R.D. at 318-22.

i.   **The Stipulated Protective Order Only Applies To The Pre-Trial Stages Of This Case**

Protective orders that apply only to the pre-trial stages of litigation do "not justify reliance by the parties" and as such, do not "merit a strong presumption against modification." *See S.E.C. v. TheStreet.com*, 273 F.3d 222, 230-31 (2d Cir. 2001) (citations and quotations omitted); *Allen*, 420 F. Supp. 2d at 301 ("[P]rotective orders that are on their face temporary or

limited may not justify reliance by the parties.  Indeed, in such circumstances reliance may be unreasonable.").

Paragraph 14 of the Stipulated Protective Order expressly provides for application only at the pre-trial stage, and states that the unilaterally assigned designations must be revisited prior to a trial in this action.  *See* Stipulated Protective Order (Pallen Decl. Ex. A) at ¶ 14 ("Nothing herein shall prevent any of the parties from using 'Confidential' or 'Highly Confidential' Litigation Materials in any trial in this litigation . . . .  Means to preserve the confidentiality of Litigation Materials presented at any trial of this matter shall be considered and implemented prior to the beginning of such trial.").  In addition, Paragraph 19 makes clear that, at some point, the Stipulated Protective Order will no longer be in effect.  *Id.* at ¶ 19 ("This Order shall remain in force and effect until modified, superseded or terminated by agreement of the parties hereto or by order of the Court.").

### ii.     A Stipulated Protective Order Has Less Force Than One Subject To A Good Cause Analysis

"A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause."  *In re Ethylene*, 255 F.R.D. at 321; *see also Fournier*, 242 F. Supp. 2d at 341 (vacating protective order where defendants were never required to show good cause).  It is undisputed that the Stipulated Protective Order in this case was negotiated between the parties and stipulated to on May 7, 2010, without a hearing regarding good cause with respect to any of the documents it covers.  Pallen Decl. at ¶ 11.

### iii.    The Stipulated Protective Order Is Broad In Scope And Applies To Almost Every Document Produced In The Litigation

"A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition."  *In re Ethylene*, 255 F.R.D. at 319

(citations omitted).  Because "blanket protective order[s] grant[] sweeping protection to most, if not all, discovery materials produced in a litigation, even discovery material that a party would have been required to disclose in the absence of a protective order," reliance is inappropriate.  *Id.*

The Stipulated Protective Order here covers all "Litigation Materials," which include: "(a) documents, exhibits, answers to interrogatories, responses to requests for admissions, deposition testimony and transcriptions (including exhibits), and all written, recorded, graphic or electronically-stored matters (and all identical and non-identical copies thereof); (b) any copies, notes, abstracts or summaries of such information, and the information itself; and (c) any pleading, affidavit, declaration, brief, motion, transcript or other writing containing such information."  *See* Stipulated Protective Order, Ex. A to the Pallen Decl. at ¶ 1.  As a result of its breadth, *all but two of the 5,906 documents produced to date* are designated as either "Confidential" or "Highly Confidential" under the Stipulated Protective Order.  Pallen Decl. at ¶ 9.

If, "even without [the confidentiality order, the court] would eventually have ordered that each discoverable item be turned over to the plaintiffs," disclosure notwithstanding the protective order is proper.  *Lugosch*, 435 F. 3d at 125; *see also In re Ethylene*, 255 F.R.D. at 319.  Here, the Third Party Agreements form the heart of DISH's claims in this action and, thus, production of the Third Party Agreements would have been necessary in any event.[9]

---

[9] Moreover, DISH could have subpoenaed the Third Party Agreements directly from the relevant Third Parties had Defendants resisted their production.  *See Lent v. Signature Truck Sys.*, No. 06 CV 569S, 2010 WL 1707998, at *5 n. 5 (W.D.N.Y. Apr. 26, 2010) ("As a general matter, a litigant can subpoena information from a nonparty competitor if that information is relevant to the litigation; this includes proprietary information or trade secrets if an appropriate protective order can be fashioned.").

> **iv.   The Stipulated Protective Order Provides A
> Process To Seek Modifications Of The Order And
> Resolve Future Disputes Regarding Designations**

When a protective order permits the parties to ask a court to resolve disputes regarding the parties' unilateral designations, parties cannot argue reasonable reliance. *Fournier*, 242 F. Supp. 2d at 341 (court unsealed documents that were covered by a protective order because, *inter alia*, the "plain language reflects an understanding that, if the parties are unable to resolve a dispute among themselves, the Court will address the matter *de novo*"); *Allen*, 420 F. Supp. 2d at 301 (finding defendant failed to show reliance because plaintiff could object to the designation of a document and trigger obligation for defendant to move for an order approving the designation); *In re Ethylene*, 255 F.R.D. at 320 ("Where the court explicitly instructed the parties that they could revisit the issue of confidentiality at any point during the proceedings, there was no reasonable reliance on the protective order remaining permanent."). The Stipulated Protective Order here indisputably permits parties to revisit confidentiality designations at any time. Stipulated Protective Order (Pallen Decl. Ex. A) at ¶ 7.

As discussed above, the Stipulated Protective Order also provides that "a party may *at any time* apply to the Court for modification of this Order." Stipulated Protective Order, ¶ 15, Ex. A to Pallen Decl. (emphasis added). *See Lugosch*, 435 F. 3d at 126 (where "the confidentiality order specifically contemplates that relief from the provisions of the order may be sought *at any time*…it is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret." (emphasis added)); *see also In re Ethylene*, 255 F.R.D. at 320.

v.      **The Stipulated Protective Order Affords Parties And
Non-Parties The Ability To Unilaterally Designate Documents**

If a protective order provides "extensive deference" to the parties in the form of

permitting unilateral designations of confidentiality, a party cannot argue that it reasonably relied

on the order's protection. *Fournier*, 242 F. Supp. 2d at 341-42 (unsealing documents that were

unilaterally designated by party under the protective order); *see also In re Ethylene*, 255 F.R.D.

at 322 (granting motion to modify protective order and finding that "because the parties merely

stipulated to a blanket order granting the parties broad discretion to place material under the

Protective Order at their own designation, it is not reasonable for the . . . defendants to contend

that they relied on the Order's protection to produce all discovery materials."). In such

circumstances, the designating party has never satisfied the criteria for seeking protection -- *i.e.,*

a designating party must demonstrate "'clearly defined and serious injury' that would result

from" the disclosure of the document. *Allen*, 420 F. Supp. 2d at 302.

In the Stipulated Protective Order here: "Litigation Materials…may be designated

'Confidential' *by any producing party or non-party*." Stipulated Protective Order, Pallen Decl.

Ex. A at ¶ 2 (emphasis added). Similarly, Paragraph 2 states: "Litigation Materials . . . that the

producing party or non-party believes, in good faith, should be afforded the highest level of

confidentiality by the Court, *may be designated 'Highly Confidential' by any producing party or

non-party*." *Id.* (emphasis added). *See also id.* at ¶ 7 ("The party or non-party designating any

Litigation Materials as 'Confidential' or 'Highly Confidential' shall, in the first instance,

determine in good faith whether it constitutes 'Confidential' or 'Highly Confidential'

information covered by this Order.").

**B.      DISH Does Not Seek To Provide Public
         Access To The Third Party Agreements**

Finally, although "[r]equests to modify protective orders so that the public may access

discovery materials is arguably subject to a more stringent presumption against modification

because there is no public right of access to discovery materials," *In re Ethylene*, 255 F.R.D. at

324, DISH does not seek the ability to permit public access to the Third Party Agreements here.

DISH merely requests that *one* employee be permitted to view the Third Party Agreements solely

in connection with the litigation.

Based on the foregoing, we respectfully submit that the modification requested here is

proper and request that the Court grant such modification.

## CONCLUSION

For all of the foregoing reasons, we respectfully request this Court grant Plaintiff's

Motion to authorize an appropriate employee in DISH's Programming Department to review the

Third Party Agreements on which DISH's claims are based.

Dated: New York, New York
       April 19, 2011

                              FLEMMING ZULACK WILLIAMSON
                                 ZAUDERER LLP

                              By:
                                 Dean R. Nicyper
                                 Lissa C. Gipson
                                 Mark C. Zauderer
                              One Liberty Plaza
                              New York, New York 10006
                              (212) 412-9500

                              *Attorneys for Plaintiff DISH Network L.L.C.*

19