UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DISH NETWORK L.L.C. F/K/A/ ECHOSTAR
SATELLITE L.L.C.,                                           09-CIV-6875 (JGK) (FM)

        Plaintiff,

    v.

ESPN, INC. and ESPN CLASSIC, INC.

        Defendants.
-----------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR ATTORNEYS' FEES

WEIL, GOTSHAL & MANGES, LLP
Diane P. Sullivan
David L. Yohai
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
david.yohai@weil.com

*Attorneys for Defendants ESPN, Inc. and ESPN Classic, Inc.*

## TABLE OF CONTENTS

<u>**Page**</u>

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND.................................................................................2

ARGUMENT.........................................................................................................6

I.   DEFENDANTS ARE ENTITLED TO RECOVER THEIR REASONABLE
     ATTORNEYS' FEES AS THE "PREVAILING PARTY" UNDER THE
     AGREEMENTS ............................................................................................6

II.  THE ATTORNEYS FEES SOUGHT ARE REASONABLE AND FULLY
     SUPPORTED ..............................................................................................10

CONCLUSION ...................................................................................................13

US_ACTIVE:\44209716\13\44078.0021

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.,
    No. 04-civ-3531(LTS), 2009 U.S. Dist. LEXIS 130133 (S.D.N.Y. Aug. 5, 2009) .................7

Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,
    532 U.S. 598 (2001) ...............................................................................................................10

FH Krear and Co. v. Nineteen Named Trustees,
    810 F.2d 1250 (2d Cir. 1987) .................................................................................................10

In re AOL Time Warner S'holder Deriv. Litig.,
    No. 02 Civ 6302 (CM), 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ......................................11

In re Duffy,
    25 Misc. 3d 901 (Sur. Ct. Monroe Cnty. 2009) .....................................................................11

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ..................................11

Kauhsen v. Aventura Motors, Inc.,
    09-civ-4114 (DRH), 2012 U.S. Dist. LEXIS 94637 (E.D.N.Y. July 9, 2012) ........................9

King v. JCS Enters., Inc.,
    325 F. Supp. 2d 162 (E.D.N.Y. 2004) ....................................................................................10

Kuk Je Med. Corp. v. Home Diagnostics, Inc.,
    No. 92 Civ. 3308 (KTD), 1994 WL 465844 (S.D.N.Y. Aug. 26, 1994) .................................9

Lefkowitz v. Van Ess,
    166 A.D.2d 556 (2d Dep't 1990) ............................................................................................11

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,
    418 F.3d 168 (2d Cir. 2005) .................................................................................................6, 9

MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.,
    No. 95 Civ. 9569 (RO), 2001 WL 674142 (S.D.N.Y. June 15, 2001) ....................................9

N.Y. State Ass'n for Retarded Children, Inc. v. Carey,
    711 F.2d 1136 (2d Cir. 1983) .................................................................................................10

NetJets Aviation, Inc. v. LHC Commc'ns, LLC,
    537 F.3d 168 (2d Cir. 2008) .....................................................................................................7

US_ACTIVE:\44209716\13\44078.0021

PPG Indus., Inc. v. Zurawin,
    52 Fed. Appx. 570 (3d Cir. 2002)................................................................9, 10

Sykes v. RFD Third Av. I Assocs., LLC,
    833 N.Y.S.2d 76 (N.Y. App. Div. 2007) .....................................................7

**OTHER AUTHORITIES**

A Nationwide Sampling of Law Firm Billing Rates, NAT'L L.J. (Dec. 19, 2011), available
    at http://tinyurl.com/7qvrts4 ......................................................................11

Peter Lattman, The Law Blog Thousand-Dollar Bar, WALL ST. JOURNAL LAW BLOG,
    Aug. 22, 2007, available at http://blogs.wsj.com/law/2007/08/22/the-law-blog-
    thousand-dollar-bar/...................................................................................12

US_ACTIVE\44209716\13\44078.0021

Defendants ESPN, Inc. and ESPN Classic, Inc. (together, "ESPN" or "Defendants") respectfully submit this Memorandum of Law in support of their motion for attorneys' fees.

## INTRODUCTION

Plaintiff Dish Network L.L.C. f/k/a EchoStar Satellite L.L.C. ("Dish") brought this action against ESPN ultimately asserting thirteen separate claims arising out of Sections 13 and 3(f) of the September 15, 2005 Distribution and Licensing Agreement between Dish and ESPN (the "Dish-ESPN Agreement") and a purported claim for breach of the covenant of good faith and fair dealing. See Declaration of David Yolkut, dated March 15, 2013 ("Yolkut Decl."), Ex. A (SAC at ¶¶ 27-28). ESPN vigorously contested all of Dish's claims and successfully defended against twelve of the thirteen claims alleged in Dish's Second Amended Complaint (the "SAC"), six of which Dish dropped before trial and six of which ESPN prevailed on at trial. In addition, this Court dismissed Dish's good faith and fair dealing claim on summary judgment. ESPN is clearly the prevailing party here.

On February 28, 2013, following a three-week trial, a jury unanimously found in favor of ESPN on six of the seven claims tried, including Dish's $130 million claim concerning the ESPN Classic channel (far and away the largest claim in the case), a claim concerning internet rights, and four separate claims concerning a la carte rights. See Yolkut Decl. Ex. B (Feb. 28, 2013 Trial Tr. at 1648-1650) (Special Verdict). Prior to trial, Dish withdrew its claim concerning rate reductions in connection with the loss of NFL programming with prejudice, see Yolkut Decl. Ex. C (Oct. 22, 2012 Order, Docket No. 91), and dropped another five claims mere weeks before trial, which the Court dismissed. See Yolkut Decl. Ex. D (Jan. 18, 2013 Letter from Barry Ostrager) and E (Feb. 7, 2013 Order, Docket No. 126). These dropped claims included Dish's claims concerning ESPN's "Swap Deals" with DirecTV and Comcast – the primary basis of Dish's original Complaint.

1

The Dish-ESPN Agreement expressly provides that "[i]f either party should bring an action against the other in order to enforce any other provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees in addition to any other remedy it may have."    See Yolkut Decl. Ex. F at § 14(f) (Dish-ESPN Agreement).    As the "prevailing party" on the overwhelming majority of Dish's claims, including the largest claim tried to the jury, ESPN is "entitled to recover its reasonable attorneys' fees."    Id.

Among other things, this complex case involved the production of tens of thousands of pages of documents and eighteen fact and six expert witness depositions.    It culminated in an extremely hard fought, almost three-week jury trial on seven of the thirteen claims alleged in the Dish's SAC.    Dish prosecuted the case for approximately three and a half years.    ESPN incurred significant attorneys' fees as a result.

Accordingly, and as set forth in detail in the accompanying Declaration of David L. Yohai, dated March 15, 2013 (the "Yohai Declaration" or "Yohai Decl."), ESPN is entitled to recover $4,968,932.68 in reasonable attorneys' fees, an amount which reflects a reduction for Dish's limited success on the Deportes claim, based on hourly rates that Weil, Gotshal & Manges LLP ("Weil") charges to fee-paying clients such as ESPN, which are commensurate with the prevailing market rates charged by Weil's peers in New York City for similar services, including Dish's trial counsel at Simpson, Thacher and Bartlett LLP.    See infra Argument § II.

## FACTUAL BACKGROUND

On August 4, 2009, Dish filed its original Complaint, alleging that (i) ESPN had breached the Most Favored Nations provision ("MFN") of the Agreement by permitting Comcast and DirecTV "to offer and distribute ESPN Classic and ESPNU with net effective rates and other provisions, including but not limited to packaging rights" that Dish believed were more favorable to Comcast and DirecTV than that which was provided to Dish under the Dish-ESPN Agreement

2

and (ii) that ESPN had breached the covenant of good faith and fair dealing.   See Yolkut Decl.
Ex. G (Original Complaint).

On April 27, 2010, Dish filed an Amended Complaint additionally alleging that ESPN
breached the MFN by (i) providing DirecTV a better rate on ESPN Deportes in Puerto Rico and
the US Virgin Islands without offering the same terms to Dish; (ii) permitting Comcast "to
distribute ESPNU while removing any packaging requirements for such distribution and
affording Comcast penetration requirements for such distribution that are discounted far below
those required of Dish, without offering to Dish those same terms"; (iii) permitting Comcast to
distribute ESPNU to bars and taverns on an a la carte basis without offering the same to Dish;
(iv) permitting DirecTV to distribute ESPN-HD to bars and taverns on an a la carte basis without
offering the same to Dish; (v) providing Comcast four 30-second advertising spots each day on
ESPNU without offering the same to Dish; and (vi) offering DirecTV rate reductions if ESPN
ceases to telecast NFL games without offering the same to Dish.   See Yolkut Decl. Ex. H
(Amended Complaint).

In October 2010, Dish sought leave to file a Second Amended Complaint, which included
four additional claims that ESPN breached the MFN by (i) granting Comcast a la carte rights for
ESPN Classic without offering the same to Dish; (ii) giving Comcast launch support of $2.00 per
subscriber for distribution of ESPN Classic without offering the same to Dish; (iii) giving
Comcast Co-Op Marketing Support with a value of between $0.25 and $0.45 per subscriber,
without offering the same to Dish; and (iv) granting Comcast a la carte rights for distribution of
ESPN2 to bars and taverns without offering the same to Dish.   See Yolkut Decl. Ex. A (SAC at
¶ 27).   Dish also alleged that ESPN breached a separate provision of the Agreement – Section
3(f) – by "granting to Time Warner Cable the right to distribute ESPN telecasts via the Internet

3

without imposing a subscription fee specifically for such distribution." See id. at ¶ 28.

The parties engaged in years of extensive discovery, during which ESPN reviewed tens of thousands of hard-copy and electronic documents in response to Dish's multiple sets of document requests.   See Yohai Decl. ¶ 4.   Moreover, Dish's wide-ranging discovery demands seeking the most sensitive commercial information in ESPN's agreements with Dish's competitors led to extensive negotiations and motion practice before the Magistrate Judge. ESPN utilized contract attorneys, supervised by counsel at Weil, to help defray the costs of this document production.   Id.   In all, ESPN produced almost 19,000 pages of documents and prepared a detailed privilege log.   Id.   ESPN also reviewed and analyzed the many thousands of pages produced by Dish; responded and objected to multiple sets of interrogatories and document requests; reviewed Dish's privilege log; and took or defended eighteen fact and six expert depositions, certain of which took place in Colorado at Dish's request.[1]   Id. at ¶ 5.   In connection with the deposition process, ESPN prepared numerous witnesses for deposition, including ESPN's 30(b)(6) witness for two full days of deposition testimony.   Id. at ¶ 7.

ESPN filed two motions for summary judgment, one in May 2010 and the other in January 2012 at the close of discovery.   The second summary judgment record was substantial, and included multiple declarations containing hundreds of pages of exhibits.   See Yohai Decl. ¶ 9.   On October 5, 2012, the Court granted in part and denied in part ESPN's second summary judgment motion, dismissing Dish's claim for a breach of the implied covenant of good faith and fair dealing and attendant request for punitive damages.   See Yolkut Decl. Ex. I (Transcript of Proceedings held on Oct. 5, 2012 at 54-55).   Throughout the case, ESPN prepared for and participated in numerous conferences before the Magistrate Judge and the Court.   Indeed, in

---

[1]   A number of these depositions, including two conducted in Colorado, took place in January 2013, the month immediately preceding trial.   See Yohai Decl. ¶ 7.

total there were over fifteen separate conferences before the judges in this case.   <u>See</u> Yohai

Decl. ¶ 8.

     To prepare for trial, ESPN incurred fees for, <u>inter alia</u>, analyzing documents to include on

its exhibit list; preparing deposition designations and analyzing deposition transcripts;

researching and writing motions in limine; researching and responding to Dish's motion in

limine; researching and responding to a motion to compel and amend the protective order;

drafting a joint pre-trial order; preparing for and attending two pre-trial conferences; preparing

for and engaging in numerous meet-and-confers and related correspondence regarding the

appropriate redactions on third-party agreements to be used as trial exhibits; preparing opening

and closing statements; drafting direct and cross-examination outlines; preparing witnesses for

examination; corresponding with opposing counsel and the Court; conferring on and determining

trial strategy; and researching and arguing various evidentiary issues.   <u>See</u> Yohai Decl. ¶ 10.

ESPN also analyzed and lodged objections, as necessary, to Dish's exhibit list and overbroad

deposition designations (which included numerous designations from witnesses that Dish called

live at trial).   <u>Id</u>. at ¶ 11.

     At trial, counsel for ESPN, among many other things, delivered opening and closing

statements; cross-examined Dish witnesses; examined numerous defense witnesses called

adversely in Dish's case; conferred with opposing counsel and the Court regarding evidentiary

issues, and researched various issues in connection with the same; and prepared for and

participated in the Court's charge conference.   <u>See</u> Yohai Decl. ¶ 12.   Dish's trial team was as

large or even larger than ESPN's, as Dish had no less than three partners from two separate law

firms, and at least three associates present at the trial at all times, as well as additional paralegals

and other litigation support staff.   <u>Id</u>. at ¶ 13.

5

After a three-week trial, the jury reached a verdict almost entirely for ESPN, finding that ESPN had not breached the Dish-ESPN Agreement with respect to six of Dish's seven claims brought to trial, including the $130-million claim relating to the ESPN Classic channel, which accounted for over 85% of the damages Dish sought.   ESPN also prevailed on Dish's Internet claim and its four a la carte claims.   See Yolkut Decl. Ex. B (Feb. 28, 2013 Trial Tr. at 1648-1650).   Dish partially prevailed on only one of its original thirteen claims – the ESPN Deportes claim – but even as to that claim, the jury awarded Dish only $4,864,269.00, or only a fraction of what Dish sought on that claim.   Compare Yolkut Decl. Ex. B (Feb. 28, 2013 Trial Tr. at 1649) with Ex. J (Pl.'s Ex. 173F, enumerating $18,905,179 in total claimed damages in connection with the ESPN Deportes claim).   The damages award on the ESPN Deportes Claim was only about 3.8% of the total damages Dish sought on all of the seven claims it tried.   On March 1, 2013, the Court entered Judgment on the jury's verdict.[2]   See Yolkut Decl. Ex. K (Judgment).

## ARGUMENT

## I.   DEFENDANTS ARE ENTITLED TO RECOVER THEIR REASONABLE ATTORNEYS' FEES AS THE "PREVAILING PARTY" UNDER THE AGREEMENTS

In a diversity action applying New York law, New York law governs a party's entitlement to attorney's fees under a contractual fee-shifting provision.   See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005) ("We apply New York substantive law to resolve the dispute regarding plaintiff's entitlement to attorney's fees.").[3]   As the Second Circuit has recognized, "[u]nder New York law, a contract

---

[2]   ESPN sought an amendment to the Judgment to properly reflect the claims on which it prevailed at trial.   Whether or not the Judgment is amended, however, there can be no doubt that ESPN prevailed on these claims at trial.

[3]   Here, the Dish-ESPN Agreement clearly provides that the "Agreement and all matters or issues collateral thereto shall be governed by the law of the State of New York applicable to contracts

that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). Moreover, where the contractual fee-shifting provision refers to the "prevailing party," "New York law as to the meaning of prevailing party is clearly applicable." Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc., No. 04-civ-3531(LTS), 2009 U.S. Dist. LEXIS 130133, at *93 (S.D.N.Y. Aug. 5, 2009) (internal citations omitted). Under New York law, "[t]o determine whether a party has 'prevailed' for the purpose of awarding attorneys' fees, the court must consider the 'true scope' of the dispute litigated and what was achieved within that scope. To be considered a 'prevailing party,' one must simply prevail on the central claims advanced, and receive substantial relief in consequence thereof." Sykes v. RFD Third Ave. I Assocs., LLC, 833 N.Y.S.2d 76, 77 (N.Y. App. Div. 2007).

The Dish-ESPN Agreement clearly states: "if either party should bring an action against the other in order to enforce any other provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees in addition to any other remedy it may have." See Yolkut Decl. Ex. F (Dish-ESPN Agreement at § 14(f)). In addition, consideration of the "true scope" of the dispute litigated between Dish and ESPN compels the conclusion that ESPN was the prevailing party here. Dish's lawsuit ultimately encompassed thirteen separate claims – twelve under the MFN provision of the Dish-ESPN Agreement and one under Section 3(f). See Yolkut Decl. Ex. A (SAC at ¶¶ 27-28). Dish, however, either abandoned or lost twelve of them. Dish withdrew its so-called "NFL rate reduction claim" with prejudice on

---

performed entirely therein." See Yolkut Decl. Ex. F at § 14(b), ESPN 00384.

January 6, 2012 in the face of impending summary judgment,[4] and withdrew another five claims only weeks before trial.   See Yolkut Decl. Ex. D.   Significantly, two of those belatedly dismissed claims were the *sole basis* of Dish's original complaint in this action:   its two MFN claims based on "Swap Deals" ESPN entered into with DirecTV and Comcast in 2009.   See id. In addition, the Court dismissed Dish's purported good faith and fair dealing claim on summary judgment.

Dish tried the remaining seven of its thirteen claims, and the jury rejected six of them – including the Comcast Classic claim, the internet claim, and the four a la carte claims – finding that ESPN did not breach either the MFN provision or Section 3(f).[5]   See Yolkut Decl. Ex. B (Feb. 28, 2013 Trial Tr. at 1648-1650) (Special Verdict)).   Moreover, the jury only awarded Dish approximately $4.8 million or about a quarter of the damages it sought on the ESPN Deportes claim.   That is only about 3.8% of the more than $153 million in total damages Dish sought at trial.   Id.   Dish also sought injunctive relief on its internet claim, which was not achieved since the jury determined that ESPN did not breach Section 3(f).   Taken against the totality of the claims brought and relief sought by Dish, it is plain that Dish prevailed on very little of what it sought.

Nor can Dish claim that it succeeded on the "central claims" in this litigation.   Dish originally brought this case complaining about ESPN's "Swap Deals" with DirecTV and Comcast, and eventually claimed that it suffered over $56 million in damages as a result of those deals.   See Yolkut Decl. Ex. M (Expert Report of Dr. Tasneem Chipty, dated July 29, 2011 at ¶

---

[4]   See Yolkut Decl. Ex. L (Plaintiff's Notice of Motion to discontinue sub-claim 27(g) of the SAC).

[5]   In fact, on four of those claims – the a la carte claims – Dish opposed summary judgment by asserting that a jury finding of breach on those claims would entitle Dish to attorneys' fees as the prevailing party.   See Yolkut Decl. Ex. I (Oct. 5, 2012 Hr'g Tr. at 27:21 – 28:4).

54(b)). Yet, as noted above, Dish withdrew the "Swap Deal" claims before trial. In addition, of the claims Dish did present at trial, the 2006 Comcast claim accounted for $130 million – or over 85% – of the damages sought by Dish. This was undoubtedly the central claim presented at trial. Indeed, both parties agreed that it should be the first claim presented on the special verdict form. See Yolkut Decl. Ex. N (Feb. 26, 2013 Trial Tr. at 1470, 1493-1494). Dish lost completely on this claim as the jury determined that ESPN did not breach the MFN as to ESPN Classic. Thus, when measured against the total scope of the parties' dispute and Dish's central claims, both in originating this action and at trial, ESPN is the "prevailing party" for purposes of attorney's fees.

This result under New York law is in accord with a similar analysis employed by the Third Circuit in determining the "prevailing party" under a contractual fee-shifting provision. In PPG Indus., Inc. v. Zurawin, 52 Fed. Appx. 570, 580 (3d Cir. 2002), the Third Circuit applied a "common-sense" approach, in which the trial court should determine the "prevailing party" by "compar[ing] the relief sought by each litigant to the relief each litigant actually received." This is consistent with New York's method of determining the "prevailing party" by evaluating the total scope of the litigation and what each party achieved within that scope.[6] In PPG

---

[6] In MTX Commc'ns Corp. v. LDDS/WorldCom, Inc., No. 95 Civ. 9569 (RO), 2001 WL 674142, at *1 (S.D.N.Y. June 15, 2001), the court suggested that the "prevailing party" in a contract fee-shifting provision should be evaluated in the same manner as in a statutory provision. This position is inconsistent with the Second Circuit's subsequent determination that decisions concerning statutory fee-shifting "ha[d] little, if any, relevance to a dispute concerning a contractual indemnity provision governed by state law." Mid-Hudson, 418 F.3d at 180; see also Kauhsen v. Aventura Motors, Inc., 09-civ-4114 (DRH), 2012 U.S. Dist. LEXIS 94637, at *12 (E.D.N.Y. July 9, 2012) (finding that cases concerning the meaning of prevailing party under a federal statute are "only marginally instructive" where an application for fees is made pursuant to a contractual provision). Moreover, the MTX Court relied on Kuk Je Med. Corp. v. Home Diagnostics, Inc., No. 92 Civ. 3308 (KTD), 1994 WL 465844 (S.D.N.Y. Aug. 26, 1994), where the court ultimately determined that the defendant was the prevailing party on a claim the plaintiff voluntarily dismissed. Id. at *3. In addition to the fact that federal statutory cases,

Industries, the Third Circuit found the defendant to be the "prevailing party" where the plaintiff

recovered only a small portion of the damages it sought in bringing the lawsuit.   Id. (holding

that the defendant "substantially achieved the result it desired by obtaining a judgment that

[defendant] was not liable for the majority of the relief [plaintiff] sought.").   Given that ESPN

was vindicated on the vast majority of the relief sought by Dish, and that Dish recovered only a

fraction (about 3%) of the damages it sought, the same result should obtain here.

## II.   THE ATTORNEYS FEES SOUGHT ARE REASONABLE AND FULLY SUPPORTED

The Yohai Declaration accompanying this motion includes contemporaneous time

records from the beginning of this case in August 2009 through February 2013.   ESPN's time

records "specify, for each attorney, the date, the hours expended, and the nature of the work

done."   N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.

1983); see also FH Krear and Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir.

1987) ("The burden is on counsel to keep and present records from which the court may

determine the nature of the work done, the need for it, and the amount of time reasonably

required . . . ."); King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (finding

time records sufficient to justify requested fee award where, as here, "the records detail the time

expended on [the] case, identifying who did the work, what was done, and when.").   Detailed

time records "serve as evidence of the work performed and results achieved" and thus provide

ample support for the Court to exercise its discretionary authority in awarding attorneys' fees.

---

like Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598
(2001), provide little, if any, guidance on the meaning of "prevailing party" under New York
law, they are also of limited utility because the rationale for awarding attorneys' fees pursuant to
a statute (i.e., to encourage litigants to act as private attorneys general) is the exact opposite of
the rationale for contractual fee-shifting (i.e., to encourage contracting parties to resolve their
disputes without resort to litigation).

In re Duffy, 25 Misc. 3d 901, 912 (Sur. Ct. Monroe Cnty. 2009); Lefkowitz v. Van Ess, 166 A.D.2d 556, 560 (2d Dep't 1990) (the reasonableness of attorneys' fees is "a matter within the sound discretion of the trial court").

The hourly rates charged to ESPN range from $855 per hour (for Diane P. Sullivan, a preeminent trial attorney and Defendants' lead counsel during the trial) and $697.50 per hour (for David L. Yohai, the head of Weil's Complex Commercial Litigation Group and lead day-to-day partner on this case who tried the matter together with Ms. Sullivan) to $55 per hour (for contract attorneys). See Yohai Decl. at ¶¶ 14-27. "A reasonable hourly rate is one that is consistent with the 'prevailing market rates in the relevant community,' that is, what similarly skilled attorneys in the area would charge for similar work." King, 325 F. Supp. 2d at 169 (internal citations omitted). ESPN's counsel's hourly rates are well within the range of rates charged by similarly positioned attorneys at comparable law firms who handle complex commercial litigations such as this one. See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig., No. 02 MDL 1484 (JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (rates of $850 for a partner and $515 for an associate "are not inordinate for top-caliber New York law firms"); In re AOL Time Warner S'holder Deriv. Litig., No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) (finding $175 to $550 hourly rate for associates and $850 hourly rate for senior partner to be reasonable); A Nationwide Sampling of Law Firm Billing Rates, NAT'L L.J. (Dec. 19, 2011), available at http://tinyurl.com/7qvrts4 (listing 16 different law firms that have partner billing rates of $855 per hour or more and associate billing rates of $513 per hour or more, which is the highest associate rate charged by ESPN's counsel). As set forth in both the sampling of nationwide law firms and in Exhibit D to the Yohai Declaration, the billing rates for large law firms in New York City are well within the range of,

11

and in fact often exceed, the hourly rates of ESPN's attorneys.   Id. (reporting partner billing rates in New York City as high as $1,120 per hour and associate billing rates as high as $730 per hour); see also Yohai Decl. ¶ 29 and Ex. D (chart prepared from various publicly available bankruptcy filings listing hourly rates charged by a number of Weil's competitor firms in 2010 and 2011).   Weil's hourly rates for this matter are certainly reasonable given the fees charged by its competitors.   Id.   Indeed, it was publicly reported in 2007 that Dish's lead trial counsel, Barry Ostrager, charges an hourly rate of at least $1,000.   See Yolkut Decl. Ex. O (Peter Lattman, The Law Blog Thousand-Dollar Bar, WALL ST. JOURNAL LAW BLOG, Aug. 22, 2007, available at http://blogs.wsj.com/law/2007/08/22/the-law-blog-thousand-dollar-bar/).

Moreover, the hours expended by Weil on this multi-year, complex litigation are reasonable.   As detailed above, ESPN researched and drafted many briefs in connection with numerous motions and also engaged in protracted discovery, including substantial document productions and twenty-four fact and expert depositions.   And, ESPN prepared for and prevailed on the vast majority of claims at a three-week jury trial, which entailed the examinations of nine live witnesses and the presentation of extensive documentary evidence. See supra Factual Background.

In addition, in an effort to be conservative in this submission, ESPN eliminated certain time entries relating solely to tasks performed in connection with Dish's Deportes claim, concerning work that was not obviously related to the litigation of this case, or where the description contained privileged information.   To be clear, ESPN is not seeking the fees associated with any of these eliminated entries, which have been redacted.   Finally, to account for the fact that some entries for which ESPN is seeking fees could include time spent in connection with the Deportes claim, ESPN has further reduced its total fees sought by 1/8

12

(12.5%).   This reduction accounts for Dish's limited success on the Deportes claim as measured against the other six claims Dish lost at trial and the NFL rate reduction claim that was dismissed with prejudice prior to trial.

## CONCLUSION

For the reasons stated above, ESPN respectfully requests that the Court grant this motion in its entirety and award ESPN reasonable attorneys' fees in the amount of $4,968,932.68, as set forth in the accompanying Yohai Declaration.

Dated:   New York, New York
         March 15, 2013

                              Respectfully submitted,
                              WEIL, GOTSHAL & MANGES LLP

                              By: _____

                              Diane P. Sullivan
                              David L. Yohai
                              767 Fifth Avenue
                              New York, New York 10153
                              (212) 310-8000
                              david.yohai@weil.com

                              *Attorneys for Defendants*

13