**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DISH NETWORK L.L.C. f/k/a ECHOSTAR SATELLITE L.L.C., | : Hon. John G. Koeltl |
| | : |
| | : |
| Plaintiff, | : No. 09 CIV 6875 (JGK) (FM) |
| | : |
| -v- | : |
| | : |
| ESPN, INC., and ESPN CLASSIC, INC., | : |
| | : |
| Defendants. | : |
| | : |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000
Barry R. Ostrager
Mary Kay Vyskocil
Gregory P. Szewczyk

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Dean R. Nicyper
Lissa C. Gipson

*Attorneys for Plaintiff DISH Network L.L.C.*

**<u>Table of Contents</u>**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................. 2

    A.    ESPN Breaches the Contract ................................................................ 2

    B.    ESPN Employs a Costly Obstructionist Strategy to Impede
            DISH's Ability to Prosecute the Case ................................................. 3

    C.    DISH Streamlines the Case To Focus on Central Damages Claims at Trial ............ 4

    D.    DISH Prevails on a Central Claim at Trial ........................................ 5

ARGUMENT ................................................................................................. 7

   I.    Under the Terms of the Contract and Controlling Law, DISH Is Entitled to
       Attorneys' Fees as the Prevailing Party ........................................... 7

    A.    DISH Is Entitled to Attorneys' Fees Pursuant to Section 14(f) of the Contract ......... 7

    B.    DISH's Attorneys' Fees Are Reasonable ............................................ 10

  II.   ESPN Cannot Be the Prevailing Party Because DISH Prevailed on One of the
       Central Claims that it Advanced .................................................... 13

    A.    ESPN Cannot be the Prevailing Party Under the Plain
            Terms of  Section 14(f) and this Court's Precedent ................................. 13

    B.    ESPN Cannot be the Prevailing Party Even Under Its Own Standard ..................... 14

  III.  At the Very Least, There Should be No Fee Shifting ................................. 16

  IV.  The Attorneys' Fees Requested by ESPN Are Unreasonable ........................... 18

    A.    ESPN's Duplicative Fees for Time Billed by Partners
            and Associates Are Unreasonable .................................................... 18

    B.    ESPN's Fees Incurred as a Result of Its Own
            Obstructionist Strategy Are Unreasonable .......................................... 22

    C.    ESPN's Requests for Fees Unrelated to this Case and Fees Attributable
            to the Deportes Claim Are Inappropriate and Unreasonable ........................... 24

CONCLUSION ............................................................................................ 25

# Cases

*Astra Oil Trading v. PRSI Trading Co. LP*, 794 F. Supp. 2d 462 (S.D.N.Y. 2011) ................................................................................................................ 22

*Blank v. Talley Indus., Inc.*, 390 F. Supp. 1 (S.D.N.Y. 1975) ....................................... 20

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598 (2001) ........................................................................................ 7

*Daiwa Special Asset Corp. v. Desnick*, 00 CIV. 3856 (SHS), 2002 WL 31767817 (S.D.N.Y. Dec. 3, 2002) ............................................................... 18, 21

*Dorazio v. Capitol Specialty Plastics, Inc.*, CIV.A. 01-6548, 2003 WL 1145408 (E.D. Pa. Mar. 13, 2003) ...................................................... 8, 9, 16

*F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987) ................................................................................................. passim

*Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456(THK), 2011 WL 6034481 (S.D.N.Y. Dec. 5, 2011) ........................................................................................................... 8

*Goldman v. Burch*, 780 F. Supp. 1441 (S.D.N.Y. 1992) ............................................. 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................. 16

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989) ....................... 13

*Kane v. Martin Paint Stores, Inc.*, 439 F. Supp. 1054 (S.D.N.Y. 1977) ...................... 20

*Kauhsen v. Aventura Motors, Inc.*, No. 09 CV 4114(DRH), 2012 WL 2789647 (E.D.N.Y. 2012) ..................................................................................... 7

*Kuk Je Med. Corp., Ltd. v. Home Diagnostics, Inc.*, 92 CIV. 3308 (KTD), 1994 WL 465844 (S.D.N.Y. Aug. 26, 1994) ...................................................... 13

*Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000) .................................................................................................................. 18

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 169 (2d Cir. 2005) ............................................................................................ 7

*MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, No. 95 Civ. 9569(RO), 2001 WL 674142 (S.D.N.Y. June 15, 2001) ................................................ 7, 9, 13

*PPG Indus. v. Zurawin*, 52 F. App'x 570 (3d Cir. 2002) ............................................. 10

*Senfeld v. I.S.T.A. Holding Co., Inc.*, 235 A.D.2d 345 (1st Dep't 1997) ..................... 10

*TIG Ins. Co. v. Newmont Mining Corp.*, 413 F. Supp. 2d 273 (S.D.N.Y.
    2005) ........................................................................................................... 16, 17

*Yea Kim v. 167 Nail Plaza, Inc.*, 05CV8560(GBD)(GWG), 2009 WL
    77876 (S.D.N.Y. Jan. 12, 2009).......................................................................... 19

Plaintiff DISH Network L.L.C. f/k/a EchoStar Satellite L.L.C. ("DISH" or "Plaintiff") respectfully submits this Memorandum of Law, together with the Affidavits of Barry R. Ostrager ("Ostrager Aff."), Dean R. Nicyper ("Nicyper Aff."), and Joshua C. Polster ("Polster Aff.") and accompanying exhibits, in support of Plaintiff's motion for attorneys' fees and in opposition to the March 15, 2013 motion for attorneys' fees filed by Defendants ESPN, Inc. and ESPN Classic, Inc. ("Defendants" or "ESPN").

## PRELIMINARY STATEMENT

On February 28, 2013, after a three-week trial, a 10-person jury unanimously found that ESPN had breached a 2005 ESPN-DISH Distribution License Agreement (the "Contract") by offering more favorable license rates to DISH's competitors and failing to offer DISH those same more favorable rates for the same amount of time, and awarded DISH $4,864,269.00 in damages. *See* Polster Aff. Ex. A (Trial Tr.) at 1649:5-15. This Court entered a judgment on March 1, 2013 entitling DISH to payment in the amount of $4,864,269 by virtue of the jury "having rendered a special verdict in favor of the plaintiff." *See* Polster Aff. Ex. B (Judgment, Mar. 1, 2013). ESPN satisfied the judgment in full, along with post-judgment interest, on March 15, 2013, and DISH acknowledged receipt of ESPN's check "in full satisfaction of the judgment entered by the court" by letter on March 19, 2013. Polster Aff. Exs. C (Mar. 15, 2013 Letter from D. Yohai to B. Ostrager); D (Mar. 19, 2013 Letter from B. Ostrager to D. Sullivan).

The Contract expressly provides that "[i]f either party should bring an action against the other to enforce any other provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees in addition to any other remedy it may have." Polster Aff. Ex. E (2005 ESPN-DISH Contract) §14(f). Here, DISH sued ESPN to enforce the Contract, demonstrated at trial that ESPN had breached the Contract, and was awarded nearly $5

million for ESPN's breach.  ESPN did not file a counterclaim, nor did it seek damages or enforcement of the Contract on its behalf.  Thus, DISH is the "prevailing party" under the Contract and is "entitled to recover its reasonable attorneys' fees"—an outcome mandated by the Contract and by controlling Second Circuit precedent.

Notwithstanding the obvious fact that DISH prevailed in enforcing the Contract and securing a multi-million dollar judgment against ESPN, ESPN is now claiming that it is somehow the "prevailing party" and entitled to attorneys' fees for an army of attorneys, including for multiple partners who never appeared at trial.  DISH has made numerous attempts to avoid burdensome litigation over this issue, including by sending a letter to the Court requesting an extension of time for this motion and opposition in order to resolve the issue through principal-to-principal discussions.  *See* Polster Aff. Ex. F (Mar. 25, 2013 Letter from B. Ostrager to J. Koeltl).  However, subsequent efforts by DISH and DISH's attorneys to resolve the issue on conciliatory terms have been rebuffed by ESPN.  While DISH's offer for both parties to walk-away from their fee petitions and all-post trial proceedings remains on the table, ESPN has refused to negotiate a reasonable settlement, and DISH has been left with no choice but to move for the attorneys' fees to which it is entitled under the Contract.  *See* Ostrager Aff. ¶ 9.

## FACTUAL BACKGROUND

A.    *ESPN Breaches the Contract*

On September 15, 2005, DISH and ESPN entered into the Contract, which governs the license fees and terms by which DISH could distribute various ESPN networks.  The Contract contains a Most Favored Nations provision ("MFN"), which protects DISH against ESPN offering more favorable rates or packaging terms on certain ESPN Networks to DISH's competitors without promptly offering those same more favorable terms to DISH.  *See* Polster

Aff. Ex. E (2005 ESPN-DISH Contract) §13.  The Contract also contains a clause awarding fees to the "prevailing party" should one of the parties be forced to sue to enforce the terms of the Contract.  *Id.* §14(f).  Specifically, the Contract provides that "[i]f either party should bring an action against the other in order to enforce any provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees in addition to any other remedy it may have."  *Id.*

In 2009, DISH discovered through publicly-available sources that ESPN had breached the MFN.  ESPN refused to engage in any meaningful discussions with DISH regarding these breaches, and DISH was forced to file a complaint for breach of contract.  As discovery proceeded in connection with the initial complaint, DISH uncovered evidence of conduct that DISH believed breached the MFN and DISH subsequently filed two amended complaints.  The Second Amended Complaint contained particularized allegations of breach of the contractual provisions relating to the MFN and internet streaming.  *See* Polster Aff. Ex. G (Second Amended Complaint, Dec. 10, 2010) ¶¶ 27–28.  Included in the MFN cause of action was a claim for breach of the MFN related to ESPN Deportes.  *Id.* ¶ 27.

B.  *ESPN Employs a Costly Obstructionist Strategy to Impede DISH's Ability to Prosecute the Case*

Prior to trial, the parties engaged in years of discovery during which ESPN refused to allow DISH's trial witnesses access to the most critical evidence in the case and redacted whole sections of these key documents so that even DISH's outside counsel was deprived of the ability to fully assess the evidence.  *See* Ostrager Aff. ¶ 10.  A high percentage of the fees incurred by DISH in the months leading up to trial arose out of the need to force ESPN to fully disclose these key third-party agreements—documents that were introduced at trial and that were integral to DISH's breach of contract claims.  *See id.* ¶¶ 11–12.  DISH made multiple

attempts to resolve this disclosure issue without involving the Court and without incurring unnecessary expenses, but, ultimately, ESPN's dilatory tactics forced DISH to file a motion to compel.  After analyzing the hundreds of pages of briefings and supporting documentation filed by both parties, the Court ruled in DISH's favor, finding that DISH's attorneys must be allowed to review the third-party agreements in their entirety and that DISH's witnesses must be allowed to review agreed-upon portions of these agreements prior to trial.  *See* Polster Aff. Ex. H (Conf. Tr., Dec. 18, 2012) at 19:1–20:25.

Although the parties were instructed to determine which portions of the agreements would be seen by DISH's witnesses prior to trial, *id.*, ESPN continued to obstruct DISH's access to two of the third-party agreements.  The dispute regarding ESPN's obstruction with respect to these two documents was referred to Magistrate Judge Maas for yet more unnecessary briefing and argument, resulting in the production of largely unredacted exhibits to be used at trial.  *See* Polster Aff. Ex. I (Order of Magistrate Judge Maas, January 19, 2013).  As a direct result of ESPN's obstructionist strategy, on the eve of trial, both DISH and ESPN had to retake multiple depositions regarding the newly unredacted documents, notwithstanding the fact that nothing prevented ESPN from producing those documents in unredacted form during the discovery phase as DISH had repeatedly requested.  *See* Ostrager Aff. ¶ 12.

C.   *DISH Streamlines the Case To Focus on Central Damages Claims at Trial*

During this same time period in which DISH and DISH's attorneys were forced to litigate access to documents which were part of DISH's proof at trial, DISH also incurred fees for necessary pre-trial preparations, including, *inter alia*, analyzing documents to include on its exhibit list; preparing deposition designations and analyzing deposition transcripts; writing motions *in limine*; responding to ESPN's motions *in limine*; negotiating and drafting a pre-trial order; preparing for and attending two pre-trial conferences; preparing opening statements;

drafting direct and cross-examination outlines; preparing witnesses for direct examination and cross-examination; corresponding with opposing counsel and the Court; conferring on and determining trial strategy; preparing and sending communication to the Court; and researching and arguing various evidentiary issues. *See* Ostrager Aff. ¶¶ 3–8.

   In order to focus the trial on the most important claims in the case, DISH voluntarily withdrew several minor MFN claims prior to trial.  First, DISH offered to sign a stipulation with ESPN agreeing to a withdrawal of the NFL claim with prejudice, but ESPN refused to sign the stipulation and forced litigation over the proposed withdrawal in order to seek attorneys' fees.  *See* Polster Aff. Ex. J (Decl. of Kimberly A. Pallen, Jan. 6, 2012) ¶¶ 4–9.  The Court allowed DISH to withdraw the NFL claim on the terms proposed by DISH finding that it would be "truly premature to make any decision . . . about who was the prevailing party" for purposes of attorneys' fees.  Polster Aff. Ex. K (Summ. J. Hr'g Tr., Oct. 5, 2012) at 3:8–14.  As trial approached, DISH decided to further "pare down the case" by withdrawing five other claims in order to focus the task of the jury and the parties onto the primary damages claims.  *See* Polster Aff. Ex. L (Jan. 18, 2013 Letter from B. Ostrager to D. Yohai).  As indicated by the withdrawal of these peripheral claims, the Deportes claim was one of the most significant claims in the case.  Indeed, of the 192 exhibits marked by the Plaintiff prior to trial—many of which were general exhibits not specific to any claim—88 were specifically related to ESPN Deportes, the very claim on which the jury awarded DISH nearly $5 million in damages.[1]

 D. *DISH Prevails on a Central Claim at Trial*

   The trial commenced on February 11, 2013, with DISH seeking money damages on two MFN claims—(i) ESPN's alleged breach of the rate MFN with respect to ESPN

---

[1] Notably, both parties' exhibit lists were submitted to the Court before DISH streamlined the claims it ultimately presented to the jury.

Deportes; and (ii) ESPN's alleged breach of the packaging MFN with respect to ESPN Classic. As was the case during the discovery and pre-trial periods, the Deportes claim was a significant focus of the trial: Of the 76 exhibits that were ultimately admitted into evidence at trial, 31 were specific to the Deportes breach.  *See* Ostrager Aff. ¶ 15.  Further, during the three-week trial, DISH called 5 of ESPN's employees or former employees, all of whom testified about the Deportes claim with two witnesses testifying exclusively about the Deportes claim.  Counsel for ESPN acknowledged during opening statements that DISH would "spend a lot of time in this case talking about [Deportes]," and then Defendants reminded the jury at summation that DISH "spent a lot of time in this case" talking about the Deportes claim.  Polster Aff. Ex. A (Trial Tr.) at 94:4, 1530:11.

At trial, DISH incurred fees for, *inter alia*, delivering opening and closing statements; examining DISH witnesses and cross-examining ESPN witnesses; conferring with opposing counsel; arguing evidentiary issues before the Court; preparing for and participating in the Court's charging conference; researching various factual and legal issues related to evidence and examination of the witnesses; and preparing and delivering a closing argument.  *See* Ostrager Aff. ¶¶ 3–8.

On February 28, 2013, the jury returned a unanimous verdict for DISH with respect to the ESPN Deportes claim and awarded DISH damages in the amount of $4,864,269. *See* Polster Aff. Ex. A (Trial Tr.) at 1649:5–15.  This Court entered a judgment on March 1, 2013 entitling DISH to payment in the amount of $4,864,269 by virtue of the jury "having rendered a special verdict in favor of the plaintiff."  *See* Polster Aff. Ex. B (Judgment, Mar. 1, 2013).  ESPN satisfied the judgment in full, along with post-judgment interest, on March 15, 2013, and DISH acknowledged receipt of ESPN's check "in full satisfaction of the judgment

entered by the court" by letter on March 19, 2013.  *See* Polster Aff. Exs. C (Mar. 15, 2013 Letter

from D. Yohai to B. Ostrager); D (Mar. 19, 2013 Letter from B. Ostrager to D. Yohai).  Despite

DISH's repeated attempts to end this litigation on reasonable terms—*i.e.*, both parties accept the

verdict and walk away from post judgment proceedings, without further burdensome and

unnecessary motions to the Court, *see* Ostrager Aff. ¶ 9; Polster Aff. Ex. F (Mar. 25, 2013 Letter

from B. Ostrager to J. Koeltl), on March 15, 2013, ESPN filed a motion to recover attorneys'

fees in an amount that would roughly negate the amount of the jury's verdict.

## ARGUMENT

I.   *Under the Terms of the Contract and Controlling Law, DISH Is Entitled to Attorneys' Fees as the Prevailing Party*

   A.   *DISH Is Entitled to Attorneys' Fees Pursuant to Section 14(f) of the Contract*

      Section 14(f) of the 2005 ESPN-DISH Contract provides:

> If either party should bring an action against the other in order to
> enforce any provision of this Agreement, *the prevailing party* shall
> be entitled to recover its reasonable attorneys' fees in addition to
> any other remedy it may have.

Polster Aff. Ex. E (2005 ESPN-DISH Contract) §14(f) (emphasis added).  The Supreme Court of

the United States has held that the term "prevailing party" is "a legal term of art" and means "a

party in whose favor a judgment is rendered, regardless of the amount of damages awarded."

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 603

(2001) (citations omitted) ("[A] 'prevailing party' is one who has been awarded some relief by

the court ....").  This Court has routinely applied this uncontroversial and common-sense

definition.[2]  *See MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, No. 95 Civ. 9569(RO), 2001

---

[2]      The inapposite cases cited by Defendants do not cast doubt on, or even mention, this definition.
*See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 169, 180 (2d Cir.
2005) (discussing whether "fee award owed to plaintiff may exceed the amount owed by plaintiff to its
attorney"); *Kauhsen v. Aventura Motors, Inc.*, No. 09 CV 4114(DRH), 2012 WL 2789647, at *4–5

WL 674142, at *1 (S.D.N.Y. June 15, 2001) ("The most common understanding of the term 'prevailing party' …. is 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.'") (citations omitted); *see also Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11 Civ. 1456(THK), 2011 WL 6034481, at *7 (S.D.N.Y. Dec. 5, 2011) (applying definition from *Buckhannon* to a fee-shifting provision in a contract governed by New York law); *Dorazio v. Capitol Specialty Plastics, Inc.*, No. CIV.A. 01-6548, 2003 WL 1145408, at *2 (E.D. Pa. Mar. 13, 2003) (same).

Here, following a three-week trial, the jury returned a unanimous verdict awarding DISH nearly $5 million. This Court then entered the March 1, 2013 Judgment, which expressly states that:

> [A]t the conclusion of the trial, on February 28, 2013, the jury having rendered a special verdict in favor of the plaintiff in the amount of $4,864,269.00, it is ORDERED, ADJUDGED AND DECREED: That the Plaintiff have judgment in the sum of $4,864,269.00 as against the defendants.

Polster Aff. Ex. B (Judgment, Mar. 1, 2013). On March 15, 2013, ESPN tendered a check to DISH's counsel in the amount of $4,864,590.58, stating that the payment was "in full satisfaction of the Judgment dated March 1, 2013" and included post-judgment interest. Polster Aff. Ex. C (Mar. 15, 2013 Letter from D. Yohai to B. Ostrager). Judgment was entered in favor of DISH for that claim; and ESPN paid the judgment. Accordingly, under the plain terms of the Contract and controlling law, DISH must be the prevailing party and is entitled to attorneys' fees.

The fact that the judgment for DISH was for dramatically less than the total damages DISH sought is entirely irrelevant. In fact, the Second Circuit has specifically rejected

---

(E.D.N.Y. July 9, 2012) (holding that plaintiff was not entitled to remuneration for legal work conducted prior to the contract's existence and that plaintiff did not win "any judicially sanctioned disposition" after the contract's existence).

any such argument as so frivolous that it does not even warrant discussion.  In *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1255–56 (2d Cir. 1987), the plaintiff sought $1,382,500 in damages on a breach of contract claim, and the jury found that the defendants were liable for only $269,400 in damages.  The defendants argued that the plaintiff was not the "prevailing party" and therefore was not entitled to attorneys' fees under the contract's fee shifting provision.  However, the district court rejected the defendants' argument and awarded the plaintiff fees for the three different sets of attorneys who had performed work on the case. *Id.* at 1262–63.

The Second Circuit not only affirmed the award to the plaintiff as the "prevailing party," but explicitly chastised the defendants for their prevailing party argument.  Indeed, the Second Circuit held that "[defendants'] contention that [plaintiff] is not a prevailing party–one of the most frivolous arguments we have encountered—does not warrant discussion." *Id.* at 1263.[3] ESPN's current argument that DISH is not a prevailing party is equally frivolous, and this Court should follow the Second Circuit's precedent and reject ESPN's argument without discussion.

Such a ruling would not only follow binding Second Circuit precedent, but it would also be consistent with this Court's prior holdings that a party is a "prevailing party" under a contract governed by New York law when the party wins judgment for less than the entire amount that it sought.  In *MTX Communications*, the court awarded attorneys' fees to a party that "sought $1,033,732 in damages [for breach of contract, but to whom] the jury awarded but $83,500—8.078 percent of its claim." 2001 WL 674142, at *2.  The court held the party "[h]aving obtained a judgment on the merits in its favor ... is the prevailing party—even if with a small "p"—and some award of attorney's fees and costs in its favor is appropriate in this case."

---

[3]       The Second Circuit affirmed the award to all three sets of attorneys. *Id.* at 1268–69.

*Id.* at \*1; *see also Dorazio*, 2003 WL 1145408, at \*2 (rejecting defendant's argument that

plaintiff was not entitled to attorneys' fees because it "secured only $160,000 in damages out of

$3,300,000" and holding that plaintiff "need not secure all the monetary relief sought to claim

prevailing party status…. Plaintiff has certainly succeeded on a significant issue in the litigation,

and won a notable amount of the central relief sought."); *Senfeld v. I.S.T.A. Holding Co., Inc.*,

235 A.D.2d 345, 739 (1st Dep't 1997) ("There is no merit to the [defendant's] argument that

since the [plaintiffs] were only slightly successful on their causes of action for negligence and

breach of the warranty of habitability in obtaining an award of damages considerably less than

that sought, and were completely unsuccessful in their remaining causes of action for an

injunction and for intentional tort, they were not the 'prevailing party' and should not have been

awarded any attorneys' fees at all.").[4]

      As this Court previously noted, DISH "plainly prevailed on one claim …which in

the general population is not an insignificant amount of money."  Polster Aff. Ex. M (Conf. Tr.,

Mar. 21, 2013) at 11:3–5.   As such, DISH is clearly the prevailing party and should be awarded

its attorneys' fees.

    B.    *DISH's Attorneys' Fees Are Reasonable*

      As the prevailing party, DISH requests $4,827,194 in attorneys' fees,[5] which

DISH reasonably spent over the course of three years of litigation—often as a direct result of

ESPN's obstructionist strategy—culminating in a three-week jury trial and a nearly $5 million

verdict.  Although DISH is entitled to all reasonable fees incurred while prosecuting this

---

[4]     The only case Defendants cite to the contrary is a non-precedential summary order applying
Pennsylvania law and relying on an analysis employed under the "fee-shifting provision of 42 U.S.C. §
1988."  *See  PPG Indus. v. Zurawin*, 52 F. App'x 570 (3d Cir. 2002).

[5]     This total is comprised of $2,719,246 paid by DISH to Simpson Thacher and $2,107,948 paid by
DISH to Flemming Zulack.  The calculations are detailed in the Affidavits of Barry R. Ostrager and Dean
R. Nicyper.

litigation, *see F.H. Krear*, 810 F.2d at 1263, DISH is only seeking those fees necessary for its
success in proving the Deportes breach and has therefore redacted all fees devoted to other
claims. Additionally, DISH has also redacted, and is not seeking recovery of, any fees resulting
from the primary responsibility for the case passing from Flemming Zulack to Simpson Thacher.

The $4,827,194 fees requested by DISH are for strictly necessary work DISH's
attorneys performed to prevail on the case and win a multimillion dollar verdict: crafting the
operative Complaint; reviewing and producing documents; amending the Complaint in light of
the breaches that DISH uncovered during discovery (including the Deportes breaches); taking
and defending the depositions of ESPN and DISH witnesses; responding to ESPN's multiple
motions for summary judgment; and preparing for and prosecuting a three-week breach of
contract jury trial.[6] *See* Ostrager Aff. ¶¶ 3–8; Nicyper Aff. ¶¶ 3–9.

Moreover, DISH has redacted—and does not seek recovery for—substantial
portions of the attorneys' fees that were incurred for tasks necessary to the prosecution of this
case. For example, although multiple partners and associates from Flemming Zulack remained
on the case from its inception through the verdict, and contributed to the judgment DISH
secured, DISH only requests attorneys' fees for the work Flemming Zulack attorneys performed
before Simpson Thacher fully joined the case, and, after that time, requests fees only for work
performed by Simpson Thacher attorneys: There is no overlap in fees requested by DISH. *See*
Ostrager Aff. ¶ 16; Nicyper Aff. ¶ 20. In addition, DISH does not seek recovery for fees relating
to the transition, including time spent by Simpson Thacher attorneys familiarizing themselves
with background information. *See* Ostrager Aff. ¶16. To further limit its request, DISH only

---

[6]     Much of this work was multiplied and complicated by ESPN's obstructionist tactics, such as
filing duplicative summary judgment motions, withholding various forms of the third-party agreements,
and waiting until the night before their scheduled testimony to inform DISH that it would not be calling
one witness and was reserving decision on whether to call another. *See infra* Section IV.

seeks recovery for the time of those Simpson Thacher attorneys who were fully engaged in either preparing for or conducting the trial. *Id.* From April 2012 through February 2013, DISH seeks recovery only for the time of *two partners, three associates, and two paralegals*, *Id.* ¶¶ 3–8, and from July 2009 through March 2012, DISH seeks recovery for the time of only six attorneys and two paralegals. Nicyper Aff. ¶ 10. And, even though it is entitled to fees related to the entire prosecution of the trial, DISH does not seek recovery for time devoted to claims other than the Deportes breach, for work related to a mock trial exercise conducted in July 2012, or for work related to the direct examination of a witness DISH chose not to call. Ostrager Aff. ¶ 16.

Notably, ESPN has not made similar efforts to ensure the reasonableness of its attorneys' fees, as discussed more fully in Section IV. In November 2012 alone, ESPN seeks recovery for the legal fees of four partners, five associates, and three paralegals.[7] ESPN also seeks recovery for the time spent by four partners who worked simultaneously on the case; time its attorneys spent reading background information and familiarizing themselves with the case; and time preparing direct examination scripts for multiple witnesses that it chose not to call. Conversely, DISH has heavily redacted its requested fees to a minimum number of timekeepers and tasks.

The hourly rates billed by DISH's attorneys for these necessary litigation tasks conform, by ESPN's own admission, to the rates charged by similarly positioned attorneys. *Id.* ¶¶ 3–8; *see* Yohai Decl. Ex. D (showing hourly rates for senior partners ranging from approximately $1000 to $1200 and for junior and mid-level associates ranging from approximately $400 to $700); *see also F.H. Krear & Co.*, 810 F.2d at 1263 (noting that factors courts consider in evaluating reasonableness include the "time and labor required," the "lawyer's

---

[7]     *See* Yohai Decl. Ex. A (recording entries of partners JQ, DPS, DLY and TET, associates AST, DY, JG, EO, and AV, and paralegals, LH, AS, and KMR for 11/01/12 through 11/30/12)

experience, ability and reputation" and the "customary fee charged by the Bar for similar services").

In sum, the fees of $4,827,194 are reasonable in light of the work DISH's attorneys completed and the verdict and damages they secured.

## II.    *ESPN Cannot Be the Prevailing Party Because DISH Prevailed on One of the Central Claims that it Advanced*

### A.    *ESPN Cannot be the Prevailing Party Under the Plain Terms of Section 14(f) and this Court's Precedent*

Under the plain terms of Section 14(f) of the Contract, ESPN *cannot* be the prevailing party because DISH brought the action to enforce the Contract and DISH prevailed in securing a judgment against ESPN.  Section 14(f) begins, "[i]f either party should bring an action against the other in order to enforce any other provision of this Agreement."  Polster Aff. Ex. E (2005 ESPN-DISH Contract) §14(f).  This language evinces the purpose of the fee-shifting provision: to protect a party who "should bring an action against the other in order to enforce any other provision of th[e] Agreement."  Indeed, this Court has recognized this principle by generally limiting a defendant's ability to recover fees to situations where it succeeded on a significant counterclaim or where the plaintiff's entire complaint was so groundless that it could not even survive a motion for summary judgment.  *See MTX Commc'ns*, 2001 WL 674142 (awarding attorneys' fees to defendant that succeeded on counterclaim); *Kuk Je Med. Corp., Ltd. v. Home Diagnostics, Inc.*, No. 92 CIV. 3308 (KTD), 1994 WL 465844 (S.D.N.Y. Aug. 26, 1994) (awarding attorneys' fees to defendant when evidence at the summary judgment stage established that plaintiff's only claim was entirely "groundless"); *Goldman v. Burch*, 780 F. Supp. 1441, 1446 (S.D.N.Y. 1992) (awarding attorneys' fees to defendant where it "overwhelmingly succeeded under its counterclaims"); *see also Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989) ("Inasmuch as a promise by one party to a contract

to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.").

Here, DISH was the only party to bring an action to enforce a provision of the Agreement. ESPN did not file a single counterclaim, and did not prevail on either of its two motions for summary judgment. DISH is the only party to win a judgment that the other party had breached the Contract and is the only party to secure a damages award. And, of course, ESPN was the only party that the jury found had breached the Contract and owed the non-breaching party (DISH) damages. Further, regardless of which claims were prosecuted at trial, DISH's complaint cannot be considered "groundless" as this Court expressly denied two separate motions for summary judgment, holding that "material issues [of fact] abound." Polster Aff. Ex. K (Summ. J. Hr'g Tr., Oct. 5, 2012) at 52:23; *see also* Polster Aff. Ex. P (Op. & Order Den. Def's Mot. Summ. J., Mar. 31, 2011). Accordingly, under this Court's precedent, ESPN cannot be the prevailing party.

### B.   *ESPN Cannot be the Prevailing Party Even Under Its Own Standard*

In all events, ESPN cannot be the prevailing party even under ESPN's own standard. ESPN contends that "[t]o be a 'prevailing party,' one must simply prevail on *the central claims* advanced, and receive substantial relief in consequence thereof." (Def. Mot. at 7) (emphasis added). DISH "plainly prevailed on one claim" for a significant amount of money— nearly $5 million.[8] Polster Aff. Ex. M (Conf. Tr., Mar. 21, 2013) at 11:3–5. And this claim, the ESPN Deportes claim, was a central claim advanced by DISH.

---

[8]   ESPN's assertion that the jury rejected six of DISH's seven claims at trial is a misstatement. The special verdict form only included four liability questions. The four *a la carte* breaches were grouped in a

The Deportes claim was the most time-intensive claim of the entire case. The vast majority of ESPN's internal communications centered around its Deportes breaches.[9] Accordingly, both parties focused heavily on these Deportes-related documents during discovery and trial preparation. Indeed, in the months prior to trial, the parties exchanged no fewer than 25 letters, litigated two motions, and conducted multiple meet and confers relating to 20 third-party agreements—8 of which were specific to Deportes.[10] *See* Ostrager Aff. ¶ 15. The parties' exhibit lists further highlight the importance of the Deportes claim to both parties: on Plaintiff's Exhibit List, 88 of the 192 documents listed are specific to the Deportes claim, and on Defendants' Exhibit List, 54 of the 156 documents listed are specific to Deportes. *Id.*

Not only was the Deportes claim central to discovery and pretrial preparation for both parties, it was a central claim advanced by DISH at trial. The Deportes claim was one of only two claims for damages that DISH brought to trial. And, of the 76 exhibits admitted into evidence, 31 were specific to Deportes. *Id.* Further, every single ESPN witness testified about the Deportes breach, with two of the witnesses—Messrs. Hutcheson and Grustas—testifying *solely* about the Deportes breach.

Indeed, ESPN's own attorney repeatedly highlighted for the jury how important the Deportes claim was to DISH. During opening statements, ESPN's counsel told the jury that DISH was "going to spend a lot of time talking about" the Deportes claim, and at summation,

---

single question and the Deportes breaches involving DirecTV, Time Warner Cable, and Verizon were grouped in a single question. Under ESPN's logic, DISH succeeded in proving six Deportes breaches involving three distributors.

[9]        Counsel for ESPN admitted as much, proclaiming to the jury that there were "no internal e-mails from ESPN" concerning whether the Comcast Classic deal triggered DISH's MFN. Polster Aff. Ex. A (Trial Tr.) at 1530:1–3.

[10]        The fact that the Deportes claim did not precipitate DISH's initial Complaint but was uncovered during discovery and added to DISH's Amended and Second Amended Complaints is of no import. The Deportes claim was plainly central to the factual development of the case.

Counsel reminded the jury that DISH had "spent a lot of time in this case talking about" the Deportes claim. Polster Aff. Ex. A (Trial Tr.) at 94:4, 1530:11. ESPN conceded to the jury that the Deportes claim was DISH's strongest claim, and urged the jury to focus instead on the Comcast Classic claim. *See id.* at 530:4–14. ESPN's admitted trial strategy—to turn the jury's attention away from the claim for which there was the most documentary evidence—demonstrates that the Deportes claim was one of "the central claims advanced" by DISH.

Further, there is no dispute that DISH received "substantial relief" on the Deportes claim. The jury returned a unanimous verdict for DISH on the Deportes claim and awarded DISH nearly $5 million dollars in damages. *See* Polster Aff. Ex. A at 1649:5-15. The Court entered judgment for DISH accordingly. *See* Polster Aff. Ex. B (Judgment, Mar. 1, 2013); *see also Dorazio*, 2003 WL 1145408, at *2 ("Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes, however, if they 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' Thus, because Dorazio succeeded on his central breach of contract claim, he need not have survived summary judgment or judgment as a matter of law on his [two] intellectual property claims to be considered the prevailing party." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))).

In sum, whether analyzed under the plain terms of Section 14(f) and this Court's precedent or under ESPN's own standard, ESPN cannot be considered the prevailing party.

### III.   At the Very Least, There Should be No Fee Shifting

In any event, if the Court finds that both DISH and ESPN were prevailing parties under the terms of the Contract, under New York law, courts generally do not award attorneys' fees to either party in such circumstances. Indeed, this common-sense principle was clearly articulated and applied by this Court in *TIG Insurance Co. v. Newmont Mining Corp.*, 413 F. Supp. 2d 273 (S.D.N.Y. 2005) (holding that when parties litigate under a contract which allows

the "prevailing party" to recover attorneys' fees, and each party is successful on a claim that is not de minimis, courts should not award attorneys' fees).

In *TIG*, the plaintiff brought two breach of contract claims under a settlement agreement that permitted the "prevailing party" to recover attorneys' fees in the event of litigation. The first claim alleged that the defendants withheld $960,000, and the second claim alleged that defendants owed interest on certain late payments. *Id.* at 279–80. The court found that the plaintiff had not met its burden of proof on the first claim but had proven the second claim, which was worth much less in damages ($122,492.05). *Id.* at 286. To determine which, if any, party was entitled to attorneys' fees under the contract, the court "analyzed the true scope of the dispute litigated" and "compare[d] what each party achieved within that scope" (the same standard that Defendants propose be applied here). *Id.* at 282 (quotation marks omitted). Noting that the plaintiff did not win on "its most substantial claim," but did win a judgment that was not de minimis, the court held that "neither party's success in this action is sufficient to justify a finding that either is the prevailing party for purposes of an award of fees and costs under the Agreement." *Id.* at 286–87.

The *TIG* court's holding is directly applicable to the present case if this Court finds that both DISH and ESPN are prevailing parties under the Contract. Under this Court's clearly articulated standard, the fact that the jury determined that DISH did not meet its burden on the Comcast Classic claim is immaterial, even though DISH had sought more damages for that claim. The jury found that DISH had proved breach on the ESPN Deportes claim, and DISH won a judgment for $4,864,269—a sum that is clearly not de minimis. *See* Polster Aff. Ex. M (Conf. Tr., Mar. 21, 2013) at 11:3–5. Accordingly, under this Court's precedent, ESPN cannot recover attorneys' fees under the Contract, even if it could be considered a prevailing party on

the Comcast claim while having a multi-million dollar judgment entered against it on the

Deportes claim.

## IV.     *The Attorneys' Fees Requested by ESPN Are Unreasonable*

In all events, the attorneys' fees requested by ESPN are an unreasonable product

of overstaffing, unnecessary and duplicative work, and ESPN's own dilatory litigation tactics.  In

fact, under this Court's precedent, the sheer number of ESPN attorneys and staff—including no

fewer than four partners, eight associates, innumerable contract attorneys, ten paralegals, and

other support staff—is-in-and-of-itself, an indication of unreasonableness. *See Daiwa Special*

*Asset Corp. v. Desnick*, No. 00 CIV. 3856 (SHS), 2002 WL 31767817, at \*3 (S.D.N.Y. Dec. 3,

2002) (finding requested attorneys' fees were excessive when, *inter alia*, "no fewer than 17

different lawyers and summer associates worked on this action ... including four partners, ten

associates, and three summer associates").  The extent of ESPN's unreasonable billing often

cannot be quantified because of the block-billing method ESPN employed.  Courts use

percentage reductions in such circumstances.[11]

### A.     *ESPN's Duplicative Fees for Time Billed by Partners*
###         *and Associates Are Unreasonable*

The excessive number of ESPN attorneys and staff, and the hours that they billed,

reflects a duplication of effort and other inefficiencies.  For instance, ESPN requests over

$600,000 for the more than 970 hours billed by two partners who never appeared at trial: James

Quinn, co-chair of Weil's global litigation practice, and Theodore Tsekerides.  And, Mr. Quinn

took no depositions and made no Court appearances in this case.  The time billed by Mr. Quinn,

---

[11]     *See F.H. Krear*, 810 F.2d at 1265 ("The burden is on counsel to keep and present records from
which the court may determine the nature of the work done, the need for it, and the amount of time
reasonably required; where adequate contemporaneous records have not been kept, the court should not
award the full amount requested."); *see e.g., Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381,
401 (S.D.N.Y. 2000) (collecting cases with percentage reductions).

"senior advisor for the Defendants," Yohai Decl. ¶ 18, for which ESPN seeks recovery at a discounted hourly rate of $855, is entirely duplicative of the time billed by the *three other partners* on the case. The vast majority of Mr. Quinn's billing entries are for conferences with David Yohai, a partner and co-head of Weil's Complex Civil Litigation Practice.[12] *Id.* at 4. These fees are not only unreasonable because they are entirely unnecessary as the co-head of Weil's complex civil litigation practice is surely capable of managing a straightforward breach of contract action—but they are also unreasonable because they add the fees of a partner who never stepped foot in a courtroom for this action and who has the highest billing rate at his firm.

Mr. Quinn's other entries, which are for conferences with other partners and ESPN's in-house counsel,[13] review of filings that were also reviewed by other partners,[14] or general review of the case status and materials,[15] are similarly unnecessary and duplicative billings at Weil's highest hourly rate. Compounding the inefficiencies of this time, ESPN also seeks recovery for the time the other three partners individually spent meeting with Mr. Quinn.[16] ESPN fails to explain why this consultation with a "senior advisor" partner was necessary throughout a litigation in which three other partners also billed heavily, including the lead trial counsel and the co-head of the firm's Complex Civil Litigation practice. *See Yea Kim v. 167 Nail Plaza, Inc.*, No 05 CV 8560(GBD)(GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009)

---

[12]   *See, e.g.,* Yohai Decl. Ex. A at 8/4/09, 6/16/10, 6/18/10, 6/24/10, 11/2/10, 11/10/10, 8/2/11, 2/28/12, 3/1/12, 3/9/12, 3/14/12, 9/10/12, 10/4/12, 10/5/12, 10/8/12, 10/9/12, 10/10/12, 10/11/12, 10/26/12, 11/6/12, 11/16/12.

[13]   *See, e.g.,* Yohai Decl. Ex. A at 10/12/12, 10/22/12, 11/7/12, 11/13/12, 11/19/12, 12/3/12, 12/4/12, 12/14/12, 2/4/13, 2/8/13.

[14]   *See, e.g.,* Yohai Decl. Ex. A at 6/18/10, 1/10/12, 3/7/12, 3/14/12, 11/19/12.

[15]   *See, e.g.,* Yohai Decl. Ex. A at 10/7/12, 10/15/12, 10/16/12.

[16]   *See, e.g.,* Yohai Decl. Ex. A at 3/24/10 (DLY), 6/18/10 (DLY), 6/22/10 (DLY), 11/02/10  (DLY), 8/17/11 (TET), 9/10/12 (DLY), 10/2/12 (DLY), 10/8/12 (DLY), 10/9/12 (DLY),  11/6/12 (DLY),  12/4/12 (DPS).

(reducing attorneys' fees award where "plaintiff has not explained the need for the large number of attorneys on this case").  "[P]arties to a litigation may fashion it according to their purse and indulge themselves and their attorneys, but they may not foist their extravagances upon their unsuccessful adversaries." *Blank v. Talley Indus., Inc.*, 390 F. Supp. 1, 4 (S.D.N.Y. 1975) (internal quotation marks omitted).  None of the attorneys' fees expended in connection with Mr. Quinn's advisory role is reasonable or recoverable.

ESPN's overstaffing and the duplicative nature of the attorneys' fees for which it now seeks recovery is particularly evident during the period when Diane Sullivan joined the case as a fourth partner.  While inefficiencies caused by a change in staffing may be unavoidable, they are not recoverable.[17] *See Kane v. Martin Paint Stores, Inc.*, 439 F. Supp. 1054, 1056 n.1 (S.D.N.Y. 1977) ("[W]hen Hausfeld became heavily involved in the case, replacing Milstein as Cohen's principal assistant, he must have spent a good deal of time reviewing and familiarizing himself with the case file and the discovery materials to date, with which Milstein was already conversant.  This time should not be charged to the defendants."), *aff'd*, 578 F.2d 1368 (2d Cir. 1978).  Specifically, Ms. Sullivan spent time, for which ESPN seeks recovery, reviewing case background and meeting with other partners and associates to discuss case background.[18]  As a matter of law, none of this time—the time spent by Ms. Sullivan and the time spent by the attorneys meeting with her—is recoverable.  Likewise, the time spent by other attorneys and paralegals reviewing case background upon joining the matter is not recoverable.[19]

---

[17]     DISH does not seek recovery  for any overlap in staffing between Simpson Thacher and Flemming Zulack or any time spent by Simpson Thacher attorneys familiarizing themselves with the case. *See infra* Section I.B.

[18]     *See, e.g.*, Yohai Decl. Ex. A at 10/8/12, 11/7/12.

[19]     *See, e.g.*, Yohai Decl. Ex. A at 10/3/12 (AV), 10/7/12 (JWQ), 11/1/12 (KMR), 11/6/12 (KMR), 1/2/13 (JMO).

In addition to the duplicative reviewing of case background, ESPN's surfeit of partners and associates resulted in excess and unreasonable staffing on many tasks. By way of example, for a mock trial exercise, ESPN seeks recovery for the time four partners and four associates billed over the course of nearly two months;[20] on ESPN's four *in limine* motions, each of which was just a few pages long, three partners and five associates billed extensively over the course of six weeks;[21] and in the months preceding trial, five different attorneys spent time reviewing Dr. Chipty's damages calculations.[22] Under relevant case authority, this Court routinely reduces requested attorneys' fees that reflect the "duplication of attorney efforts, the overstaffing of meetings and depositions, and the inefficient allocation of human resources." *Daiwa*, 2002 WL 31767817, at *5.

ESPN even seeks recovery for the time two partners and four associates spent preparing direct examination scripts for ESPN Executive Vice President Sean Bratches and ESPN expert Gregory Sidak, whom *ESPN* chose not to call.[23] ESPN ultimately informed DISH on the night before their scheduled testimony that Mr. Bratches would not be testifying and Mr. Sidak may or may not be testifying (thereby forcing DISH to continue preparing to cross-examine Mr. Sidak). *See* Polster Aff. Ex. N (Feb. 25, 2103 Letter from D. Yolkut to G. Szewczyk). ESPN further seeks recovery for the time many of those same attorneys and,

---

[20]   *See* Yohai Decl. Ex. A (recording entries of partners JWQ, DPS, DLY, and TET and associates AST, DY, JRG, and AV for 10/11/12 through 12/5/12).

[21]   *See* Yohai Decl. Ex. A (recording entries of partners DPS, DLY, and TET and associates DRS, DY, JRG, AV, and EO for 10/5/12 through 11/19/12).

[22]   *See, e.g.*, Yohai Decl. Ex. A (recording entries of partners DPS and TET and associates AST, JRG, and AV for 10/9/12 through 2/25/13).

[23]   *See, e.g.*, Yohai Decl. Ex. A (recording entries of partners DPS and DLY and associates DY, JRG, JMO, and AV for 1/9/13 through 2/24/13).

additionally, another partner and two other associates, spent preparing and reviewing Mr. Sidak's

expert reports.[24]  None of these attorneys' fees is reasonable.

   B.    *ESPN's Fees Incurred as a Result of Its Own*
         *Obstructionist Strategy Are Unreasonable*

         ESPN also cannot recover legal fees that it expended on its own dilatory litigation

tactics.  *See Astra Oil Trading v. PRSI Trading Co. LP*, 794 F. Supp. 2d 462, 475 (S.D.N.Y.

2011) (holding that it is unreasonable "to compel the opposing party who has litigated reasonably

to pay for its opponent's dilatory tactics").  Most principally, from the inception of the litigation

until Your Honor's directive years later at the November 2012 hearing, ESPN refused to produce

any of the third-party agreements, which form the basis of this litigation, for review by DISH's

witnesses.  *See* Polster Aff. Ex. O (Ostrager Aff., Nov. 19, 2012) ¶¶ 1–8.  And, until Your

Honor's order at the December 18, 2012 pretrial conference, ESPN refused to produce many of

the agreements in unredacted form for review even by DISH's outside counsel.  *See* Polster Aff.

Ex. H (Conf. Tr., Dec. 18, 2012) at 19:1–20:25.  ESPN's obstruction continued until the eve of

trial; ESPN did not provide versions of some of the third-party agreements until January 20,

when it was ordered to do so by Magistrate Judge Maas.  *See* Polster Aff. Ex. I (Order of

Magistrate Judge Maas, January 19, 2013).  ESPN cannot now recover fees resulting from this

years-long strategy of denying DISH access to the most critical evidence of the litigation.

         Nonetheless, large portions of the fees that ESPN now seeks are directly

attributable to its own obstructionism.  In April and May 2011, two partners and three associates

billed time opposing DISH's motion to modify the protective order to allow a single DISH

---

[24]     *See, e.g.*, Yohai Decl. Ex. A at 1/22/2013 through 1/23/2013 (DPS); 9/21/2011, 1/11/13 (DLY);
9/19/11 through 10/6/2011 (TET); 1/8/2013 through 1/16/2013 (AST); 9/19/2011 through 9/22/2011 and
12/28/2012 through 1/20/2013 (JRG); 9/24/2011 (EO).

employee to review the third-party agreements.[25]  This unnecessary billing was repeated in

November and December 2012 when two partners and three associates billed time opposing

DISH's motion to compel and to modify the protective order.[26]  ESPN continued billing in

furtherance of its obstructionist strategy throughout December 2012 and January 2013, during

which two partners and three associates billed time writing numerous letters to Your Honor,

Magistrate Judge Maas, and DISH in an effort to delay production of the agreements for as long

as possible.[27]  This unreasonable delay resulted in supplemental depositions of DISH and ESPN

employees, which are reflected in further billing by two partners and four associates.[28]

ESPN's further dilatory tactics are highlighted by ESPN's successive motions for

summary judgment in which the second motion repeated the same arguments that this Court

rejected in the first (and rejected again in the second).[29]  ESPN again gratuitously prolonged the

litigation by refusing to sign DISH's stipulation to voluntarily withdraw the NFL claim, which

resulted in needless motion practice after which the Court granted the withdrawal on the terms

---

[25]     See Yohai Decl. Ex. A (recording entries of partners DLY and TET and associates DY, JRG, CAK, and EO for 4/19/11 through 5/3/11).

[26]     See Yohai Decl. Ex. A (recording entries of partners DLY and TET and associates DY, JRG, and AV for 11/19/12 through 12/5/12)

[27]     See Yohai Decl. Ex. A (recording entries of partners DPS and DLY and associates DY, JRG, and AV for 12/20/13 through 1/20/13).

[28]     See Yohai Decl. Ex. A (recording entries of partners DPS and DLY and associates AST, DY, JRG, and AV for  12/19/12 through 1/21/13 relating to correspondence concerning depositions, preparations for depositions, and review of depositions).

[29]     See Polster Aff. Ex. Q (Mem. Supp. Def's Second Mot. Summ. J., Jan. 12, 2012) at 18–23 (arguing that: DirecTV never received a rate reduction in connection with the loss of NFL games; ESPN already offered DISH *a la carte* rights and promotional advertising spots; and Comcast had a penetration obligation, which did not trigger DISH's MFN); Polster Aff. Ex. R (Mem. Supp. Def's Mot. Summ. J., May 17, 2010) at 17–22 (same); *see also* Polster Aff. Ex. K (Summ. J. Hr'g, Oct. 5, 2012) at 49:7–52:25 (denying ESPN's second motion for summary judgment on the *a la carte*, promotional advertising, and Comcast packaging claims); Yohai Decl. Ex. A (recording entries of partners JWQ, DLY, and TET and associates DY, JRG, and EO for 12/1/11 through 3/16/12).

proposed by DISH.[30]  *See* Polster Aff. Exs. J (Decl. of Kimberly A. Pallen, Jan. 6, 2012) ¶¶ 4–9;

K (Summ. J. Hr'g Tr., Oct. 5, 2012) at 3:8–14.  None of the attorneys' fees for this time

attributable to ESPN's obstructionism is recoverable.

    C.    *ESPN's Requests for Fees Unrelated to this Case and Fees Attributable*
            *to the Deportes Claim Are Inappropriate and Unreasonable*

        Among the hundreds of pages that it has submitted, ESPN has buried fees that are

*unrelated* to this case.  For instance, ESPN seeks recovery for "emails with DISH appellate

counsel on argument dates, strategy on same" and review of "class cert papers and decision in

Canadian litigation."[31]  Not only are any attorneys' fees for these tasks, and any others unrelated

to this litigation, plainly unrecoverable, but they cast doubt upon the legitimacy of ESPN's

multiple vague block billing entries.

        Further, ESPN's arbitrary "reduction" of its fees by 1/8 in no way accounts for

DISH's success on the Deportes claim.  ESPN's treatment of the Deportes claim as equal to the *a*

*la carte*, internet, and NFL claims for purposes of its "reduction" plainly does not accord with

how the case was structured and tried.  As discussed in Part II, the Deportes claim was a major

part of DISH's case, and of its trial presentation.  The time spent on the Deportes claim during all

phases of this litigation far exceeded the time spent on the *a la carte*, internet, and NFL claims

combined, and for which DISH did not even request money damages.

        Moreover, ESPN's use of the "1/8" ratio is totally arbitrary.  The special verdict

form listed four separate claims, some of which consisted of multiple breaches.  The Deportes

claim, for example, consisted of no fewer than six separate breaches involving three different

---

[30]    *See* Yohai Decl. Ex. A (recording entries of partners DLY and TET and associates DY, JRG, and EO for 1/6/12 through 2/15/12).

[31]    *See* Yohai Decl. Ex. A (recording entries of partner DLY for 12/29/12 and associate JRG for 3/4/12).

third-party distributors.  DISH necessarily succeeded on all of these components as evidenced by the face of the special verdict form and the amount of damages awarded.  Accordingly, even if this Court accepts ESPN's own "reduction" method, ESPN's recoverable fees should be reduced by at least one-half.

## CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court deny ESPN's motion for attorneys' fees and grant DISH's motion for $4,827,194  as reasonable attorneys' fees.

Dated:  May 1, 2013
      New York, New York

SIMPSON THACHER & BARTLETT LLP

By_____

Barry R. Ostrager
Mary Kay Vyskocil
Gregory P. Szewczyk
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2002

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP

Dean R. Nicyper
Lissa C. Gipson
One Liberty Plaza
New York, New York 10006
Tel: (212) 412-9500
Fax: (212) 964-9200

*Attorneys for Plaintiff DISH Network L.L.C.*